**In re the Marriage of Judith Ann GABRIEL, Appellant–Petitioner,**

v.

**John E. GABRIEL, Appellee–Respondent.**

**No. 79A02–9412–CV–750.**

Court of Appeals of Indiana.

Aug. 25, 1995.

Ann G. Davis, Holder, Davis and Smith, Lafayette, for appellant.

Margret G. Robb, Camille Townsend, Margret G. Robb & Associates, Lafayette, for appellee.

## OPINION

KIRSCH, Judge.

### STATEMENT OF THE CASE

Judith Ann Gabriel (Wife) appeals from the dissolution of her marriage to John E.

Gabriel (Husband), and raises three issues which we consolidate as follows:

> Did the trial court abuse its discretion by accepting parties' written property settlement agreement after Wife's repudiation?

We affirm.

## FACTS AND PROCEDURAL HISTORY

Husband and Wife were married in 1987. The marriage was the second for both, and no children were born during the marriage. In 1991, the parties discussed the possibility of dissolving their marriage and agreed to initiate proceedings to do so after they received a purchase offer on the marital residence. After receiving such an offer on September 1, 1993, they began itemizing all remaining marital property.

Husband and Wife submitted their completed property list to Wife's attorney. Husband was not represented by counsel at this time. Wife's counsel prepared a settlement agreement conforming with the parties' list. The agreement provided that Husband would receive his pension, 401(K) plan, and savings and retirement plans through his employer. The agreement also provided that Wife would receive her pension, 401(K) plan, and savings and retirement plans through her employer. In September 1993, Wife signed the agreement and sent it to Husband, who also signed and approved the agreement.

Pursuant to the agreement, the parties began dividing the marital property. Each received one-half of the proceeds from the sale of the marital residence; Wife took sole possession of the 1991 Toyota and 1970 Mercedes Benz; Husband took possession of the 1989 Cadillac and 1976 Chevrolet truck. Wife received a $2,000.00 check which represented the full liquidation value of the parties' investment accounts. The parties also divided furniture, personal effects, and works of art. Wife provided written consent to be removed as the beneficiary on the Husband's 401(K) and retirement accounts, and Husband received sole possession of the accounts.

Husband then elected to take early retirement benefits offered by his employer. Husband testified at the dissolution hearing that he could not get his job back or rescind his retirement bonus. After the distribution of the marital property and Husband's retirement, Wife filed her petition for dissolution. The parties agreed to wait until after the end of the year to finalize the proceeding so that a joint tax return could be filed.

In early 1994, Wife decided that the agreement was not fair and did not represent an equal division of the marital property. She contacted her attorney and told him she intended to repudiate the agreement. At this time, the agreement had not been submitted to the court, nor had the matter been set for hearing. Wife filed a third-party request for production of documents and subpoena duces tecum asking Husband's employer to release financial information regarding Husband's lump-sum retirement benefit and his monthly retirement benefit. Husband moved to quash Wife's third-party request for production and subpoena duces tecum and to enter and approve the dissolution agreement.

After hearing evidence on Husband's motions to quash and to enter the dissolution agreement, the trial court took the motions under advisement and subsequently found that: 1) the parties entered into the written settlement agreement without fraud, duress, or undue influence; 2) the terms of the agreement were fair and equitable; 3) the parties had already substantially performed the terms of the agreement; and 4) the agreement should be incorporated into the court's Decree of Dissolution. We will supply additional facts as necessary.

## DISCUSSION AND DECISION

■ Indiana law recognizes the use of settlement agreements:

> "(a) To promote the amicable settlements of disputes that have arisen or may arise between the parties to a marriage attendant upon the dissolution of the marriage, the parties may agree in writing to provisions for ... the disposition of property....

> "(b) In an action for dissolution of the marriage the terms of the agreement if approved by the court shall be incorporat-

ed and merged into the decree and the parties ordered to perform them...."

IC 31–1–11.5–10 (1988 Ed.). This provision "gives the parties free rein to make such continuing financial arrangements as, in a spirit of amicability and conciliation, they wish." *Hull v. Hull* (1982), Ind.App., 436 N.E.2d 841, 843.

 The trial court has the discretion to accept, modify, or reject a negotiated settlement agreement. *Anderson v. Anderson* (1979), Ind.App., 399 N.E.2d 391, 398. The court should accept the agreement "[u]nless the record demonstrates some unfairness, unreasonableness, manifest inequity in the terms of the agreement, or that the execution of the agreement was procured through fraud, misrepresentation, coercion, duress, or lack of full disclosure...." *Stockton v. Stockton* (1982), Ind.App., 435 N.E.2d 586, 589. An abuse of discretion results if the court rejects or modifies "an otherwise fairly-entered-into and reasonable settlement agreement where no rational basis for such action is supported by the record...." *Id.* at 589–90.

 Wife recognizes the trial court's authority to accept, modify or reject a property settlement agreement. She argues, however, that the trial court has no authority to accept an agreement that a party has earlier repudiated. More specifically, she contends that the trial court erred when it incorporated the property settlement agreement into the decree of dissolution because she repudiated the agreement in a timely manner, namely, before the trial court approved it.

In support of her argument, Wife relies primarily upon *McClure v. McClure* (1984), Ind.App., 459 N.E.2d 398. In that case, the parties reached an oral agreement immediately prior to the final hearing. During the final hearing, the parties testified regarding the contents of the oral property agreement. The trial judge requested that the agreement be reduced to writing and signed by the parties before he would incorporate it into the dissolution decree. After the hearing, the wife filed a petition to set aside the agreement, alleging that at the time of the hearing, she was under medical care for stress and did not know to what she was assenting. The trial court held a hearing on the wife's petition, but denied her request. It then granted the dissolution and approved the oral property settlement. A dissolution decree and written settlement agreement were subsequently filed with the court. The decree was signed by the trial judge and by the husband's counsel. The accompanying settlement agreement was signed by the husband and his attorney, signed and approved by the trial judge, but not signed by the wife or her counsel.

Wife is correct that *McClure* recognized error in the trial court's acceptance of an agreement that was timely repudiated. 459 N.E.2d at 401. The timeliness of the repudiation, however, was determined by the fact that the wife voiced her repudiation before the agreement was reduced to writing and signed by the parties. Contrary to Wife's contention in the present case, the timeliness of the wife's repudiation in *McClure* was not determined with reference to the trial court's acceptance of the agreement. We explicitly stated that "[t]he salient fact in this case is that there never was a property settlement agreement in writing between the parties for the court to approve." *Id.* at 400. There never was a written agreement because the wife never signed it. The wife's repudiation of the oral agreement, together with her failure to sign the written agreement, were the factors controlling the outcome in *McClure*.

Here, on the other hand, Wife did not repudiate the agreement until after it was reduced to writing, signed by both parties, and most importantly, substantially performed. The home was sold; vehicles and household goods were distributed; and investment accounts were liquidated, all pursuant to the agreement. Moreover, Husband had substantially changed his position by retiring from his job; he was unable to return to that job or rescind his acceptance of his retirement bonus. These circumstances constitute a rational basis supporting the trial court's decision to accept the written agreement signed by both parties.

Wife also contends that reversal is warranted by our decision in *Eddings v. Eddings* (1982), Ind.App., 437 N.E.2d 493. There, the wife signed a prospective settlement agreement, but prior to trial, she hired counsel and repudiated the agreement. Relying in part on *Anderson,* 399 N.E.2d 391, we held in *Eddings* that "under the facts of this case," the trial court erred in accepting the agreement. 437 N.E.2d at 494.

In *Anderson,* the trial court entered a dissolution decree without dividing the parties' property or indicating that the parties had submitted a negotiated property settlement agreement. In an action independent of the dissolution proceedings, the wife challenged the settlement agreement, claiming fraud and attorney misconduct. In holding that the trial court properly dismissed wife's separate action, this court noted that:

> "The settlement agreement in itself is not a legal instrument binding on the parties, no matter how formally executed, until it is approved by the court and incorporated and merged into the decree. Hence, a settlement agreement that has not been approved by the dissolution court and incorporated and merged into the decree has no legal efficacy. The Dissolution of Marriage Act provides the sole method for dividing the marital property in a dissolution proceeding,—by the court's order or decree."

*Anderson,* 399 N.E.2d at 398. Based upon this language, we held in *Eddings* that the wife "was acting within her rights" when she repudiated the agreement. Our meaning there, as in *Anderson,* was that a party is not bound to comply with a settlement agreement unless and until it is accepted by the dissolution court and made a part of the decree.

Neither *Anderson* nor *Eddings* confer on parties to a settlement agreement an absolute right of repudiation prior to trial court approval of the agreement. Were it otherwise, the public policy favoring the amicable settlement of disputes by written agreement would be thwarted. As would be the case here, one party might reap all the benefit from the substantial performance of an agreement yet repudiate it to the other party's detriment prior to court approval.

■ We hold that there is no absolute right to repudiate a negotiated written prop-erty settlement agreement prior to court approval. This holding does not preclude a party from challenging an agreement at the final hearing by establishing the existence of "some unfairness, unreasonableness, manifest inequity in the terms of the agreement, or that the execution of the agreement was procured through fraud, misrepresentation, coercion, duress, or lack of full disclosure." *Stockton,* 435 N.E.2d at 589.

■ Wife also argues that the trial court erred in accepting the agreement because the evidence shows that Husband "pressured [her] and unduly influenced her by threatening her, telling her she would regret it if she did not cooperate, and that she did not deserve to live, and he should put a gun to her head." *Appellant's Brief* at 14. The trial court had conflicting evidence before it regarding coercion. Wife was represented by counsel throughout the agreement negotiations; Husband had no counsel. We also note that Wife testified that Husband never threatened her to procure her signature on the agreement. Given this evidence, we cannot say that the trial court erred when it found that the parties entered into the agreement without fraud, duress, or undue influence.

■ Finally, we reject Wife's contention that the trial court erred when it inquired into the extent of her inheritance. The basis of Wife's claim that the agreement was unfair was that the value of Husband's retirement benefits increased after the agreement was signed but before Wife filed the petition for dissolution of the marriage. Wife's inheritance, like Husband's retirement, did not occur until after the agreement was negotiated and signed. For this reason, evidence of the extent of this inheritance was necessary to determine the fairness of the agreement.[1]

Affirmed.

FRIEDLANDER and ROBERTSON, JJ., concur.

---

**1.** Wife also argues that the trial court erred when it quashed her third-party request for production

of documents and subpoena duces tecum. Our decision that the trial court did not abuse its discretion when it accepted the agreement and incorporated it into the decree renders this discovery issue moot.