784 N.E.2d 985 (2003)
In the Matter of the PATERNITY OF K.R.H.
Laura Hoffman, Appellant-Respondent,
v.
Bryan Heim, Appellee-Petitioner.
No. 49A04-0205-JV-230.
Court of Appeals of Indiana.
March 11, 2003.
*987 Kimberly A. Jackson, Jensen & Associates, Lafayette, IN, Attorney for Appellant.
Brad R. Maurer, Bingham McHale LLP, Indianapolis, IN, Rita J. Baldwin, Zionsville, IN, Attorneys for Appellee.

*986 OPINION
BAKER, Judge.
Appellant-respondent Laura Hoffman appeals the decision of the trial court awarding sole legal and physical custody of K.R.H., her one-year-old daughter, to appellee-petitioner Bryan Heim, K.R.H.'s father, alleging that the trial court erred because no hearing was held with respect to a repudiated agreement between the parties regarding custody of K.R.H., parenting time, and attorney's fees. Hoffman also contends that the agreement at issue was contrived through duress, is unconscionable, and was not final. Finally, Hoffman claims that the agreement is not in the best interests of K.R.H. As a result, Hoffman contends that the trial court erred in incorporating the agreement in its order. Concluding that the trial court committed no reversible error, we affirm.

FACTS
The facts most favorable to the judgment reveal that K.R.H. was born on March 4, 2001, to Hoffman and Heim, who were unmarried. On May 2, 2001, K.R.H. received a bruise on her head during an altercation between Hoffman and Heim. As a result, Hoffman moved out of the home, taking K.R.H. with her. On May 8, 2001, Heim filed a paternity action to establish that he was K.R.H.'s biological father.
Four preliminary hearings were held on June 20, July 31, August 21, and September 10, 2001, during which evidence was presented to the trial court regarding the parties' finances and their respective relationships with K.R.H. In between these hearings, three of Hoffman's attorneys withdrew their appearances. The trial court also ordered Heim to pay one of Hoffman's attorneys $5500.00.
On Wednesday, January 23, 2002, Hoffman was deposed for four and one-half hours. The deposition resumed on Thursday, January 24, 2002. Several breaks were scheduled throughout the day, and an hour-long lunch break occurred. At 7:30 p.m., the parties entered into negotiations for a settlement, and at 11:00 p.m., the parties reached an agreement that was reduced to writing. Among the terms of the agreement, sole physical and legal custody was given to Heim.
Before signing the agreement, Hoffman stated that she desired an additional hour of visitation each week. The agreement was altered accordingly and the changes initialed by each party. After the change, the agreement provided Hoffman with the following parenting time:

*988 1. Overnight weekend visitation every other weekend from 6 p.m. on Friday until 8:30 a.m. on Sunday.
2. During the week following a weekend when Heim has custody, Hoffman has visitation from 5:45 p.m. on Wednesday until 9 a.m. on Thursday.
3. During the week following the weekend when Hoffman has custody, Hoffman has visitation each Wednesday from 5:45 p.m. until 8:45 p.m.
Appellant's App. p. 484. The parties initialed each page of the document and signed the agreement. The agreement's last paragraph included an integration clause, stating that the agreement "contains the entire understanding of the parties." Appellant's App. p. 487.
On Friday, January 25, 2002, the trial court held a final hearing. The trial court asked counsel for each party to state on the record what had occurred during the previous twenty-four hours. Both attorneys related the same account of the deposition and subsequent agreement, though Hoffman's attorney stated thatbefore Hoffman signed the agreementshe expressed reservations about the details. After the attorneys gave their factual accounts, Hoffman stated that she wished to repudiate the agreement.
The trial court, however, stated that it was going to uphold the agreement. Specifically, the trial court was convinced that the agreement was a final understanding between the parties because of the change in visitation hours made to the agreement before signing, the parties' initials on each page, and the integration clause. The trial court also found that the agreement was not a product of undue influence or duress and that the agreement was in K.R.H.'s best interest. Furthermore, the trial court accepted into evidence the custody evaluation of Dr. Ten Eyck, a court-appointed psychologist, who recommended that sole custody be given to Heim. At the close of the hearing, Hoffman's attorney her fourth counsel in this matterrequested orally that he be allowed to withdraw from the case. The trial court granted the attorney's request.
On March 6, 2002, Hoffman filed a motion to correct error, asking the trial court to reverse its order adopting the terms of the agreement. In an accompanying affidavit, Hoffman averred that she had at first refused to sign the agreement but that her attorney, in front of opposing counsel, told her that she had no chance of winning. Additionally, her affidavit stated that she attempted to leave the deposition on January 24, 2002, several times but was forbidden to do so by her attorney. Finally, her affidavit stated that she called her therapist, father, mother, and sister during the negotiations, and they all told her not to sign the agreement. She apparently ignored their advice because her attorney told her that she would not win this case. On April 23, 2002, the trial court entered an order stating that Hoffman's motion to correct error was deemed denied by operation of Indiana Trial Rule 53.3.[1] Hoffman now appeals.

DISCUSSION AND DECISION

I. Repudiation of Agreement
Hoffman claims that the trial court erred in adopting the parties' agreement. Specifically, Hoffman argues that her repudiation of the agreement "alone necessitated *989 a hearing" to determine its validity. Appellant's Br. p. 9.
In addressing Hoffman's claim, we first note that the primary consideration of a trial court in custody matters is the best interest of the child. Kirk v. Kirk, 770 N.E.2d 304, 307 (Ind.2002). Thus, while custody agreements between the parties are to be encouraged, the trial court must ensure that the agreement is in the child's best interest. Keen v. Keen, 629 N.E.2d 938, 943 (Ind.Ct.App.1994). Furthermore, we have held that a written and signed agreement pertaining to custody, once the trial court determines the terms are in the child's best interests, is enforceable, even if a party wishes to repudiate it. Reno v. Haler, 734 N.E.2d 1095, 1099 (Ind.Ct.App.2000).
In a similar case, we held that if sufficient evidence is presented that no misrepresentation, duress, or coercion occurred, no hearing on the repudiation of a written and signed property settlement agreement is necessary. Gabriel v. Gabriel, 654 N.E.2d 894, 898 (Ind.Ct.App.1995). In Gabriel, the wife repudiated a written, signed property settlement. The trial court held a hearing on the husband's motion to enter the dissolution agreement but did not hold a hearing with respect to the wife's repudiation. The trial court granted the husband's motion to incorporate the property agreement into the dissolution order. The trial court specifically found that "the parties entered into the written settlement agreement without fraud, duress, or undue influence." Id. at 896. We upheld the trial court's incorporation of the agreement in its dissolution order despite the fact that no hearing was held regarding the wife's repudiation. Id. at 898.
At the outset, we acknowledge that Gabriel involved a property settlement, not a custody agreement. However, both Hoffman and Heim signed and filed a typed agreement. Both were represented by counsel. The agreement is formal including an integration clausenot merely handwritten notes that we have held can constitute a binding agreement. Reno, 734 N.E.2d at 1099. The trial court found that the parties "have not been subject to any undo [sic] influence or duress." Tr. p. 9. The trial court specifically asked the attorneys for both parties to provide a detailed account of the negotiations. Tr. p. 3. Apparently, the trial court was satisfied that no undue pressure had been applied to Hoffman when she entered into, and executed, the agreement. As the trial court obtained sufficient indications that the agreement was entered into willingly, no hearing on the enforceability of the agreement after Hoffman's repudiation was required. Gabriel, 654 N.E.2d at 898.

II. Contract Defenses
Hoffman next raises several defenses to the enforceability of the parties' agreement. Specifically, Hoffman argues that the negotiations between the parties which the trial court analogized to a mediated settlementwere not conducted in accordance with the Indiana Rules for Alternative Dispute Resolution. Hoffman also claims that duress and unconscionability bar the enforcement of the agreement.

A. Mediation
The trial court characterized the negotiations as "an informal mediation; the only difference being that; there wasn't a neutral third party or mediator." Tr. p. 8. Hoffman argues that since the agreement was a product of mediation, as stated by the trial court, the Indiana Rules for Alternative Dispute Resolution should have been followed. Specifically, Hoffman points out that before an agreement reached in domestic relations mediation is put into effect, the Indiana Rules for Alternative *990 Dispute Resolution require that a joint stipulation of disposition be filed with the trial court. Ind. Alternative Dispute Resolution Rule 2.7(E)(2). No joint stipulation was filed, argues Hoffman, therefore the rules were violated and the agreement must be declared void.
We first note that mediation is a particular procedure governed by rules stated in Indiana Alternative Dispute Resolution Rule 2. Additionally, Indiana Alternative Dispute Resolution Rule 2.2 states that "a court may on its own motion or upon motion of any party refer a civil or domestic relations case to mediation." However, this court has also held that parties are always free to negotiate a settlement. Ogle v. Ogle, 769 N.E.2d 644, 647 (Ind.Ct. App.2002).
Here, neither party made a motion asking the trial court to refer the matter to mediation. The trial court did not order mediation on its own motion. Furthermore, neither party submitted any evidence showing that they intended the Indiana Rules for Alternative Dispute Resolution to govern their negotiations.
While the trial court might have characterized the process as "an informal mediation," Tr. p. 8, the Indiana Rules for Alternative Dispute Resolution only apply when a court orders mediation. Ind. Alternative Dispute Resolution Rule 2.2. Thus, if the trial court does not enter an order for mediation, the parties are free to shape a settlement agreement as they wish. Ogle, 769 N.E.2d at 647. It appears that the partiesas they are always free to do crafted their own agreement.
As a result, the trial court did not err by accepting the parties' agreement without the submission of a joint stipulation of disposition because the Indiana Rules for Alternative Dispute Resolution did not govern the negotiations in this case.

B. Duress
Hoffman argues that even if the agreement between the parties was binding, it should not be enforced because she was compelled to enter into the agreement against her will. Appellant's Br. p. 18. Specifically, Hoffman argues that she signed the agreement after a long day "without eating anything substantial," subsequent to a threat being issued by her attorney to withdraw his appearance if Hoffman did not sign the agreement and after the attorney told her that she had no chance of winning custody.
We note that to avoid a contract because of duress, "there must be an actual or threatened violence or restraint of a man's person, contrary to law, to compel him to enter into a contract or discharge one." Rutter v. Excel Indus., Inc., 438 N.E.2d 1030, 1031 (Ind.Ct.App.1982).
Here, there is no evidence of any threatened violence or physical restraint to Hoffman. We acknowledge that in her affidavit, Hoffman alleged that counsel's threat to withdraw if Hoffman did not sign the agreement made her feel pressured. Appellant's App. p. 521. However, such factseven if truedo not rise to the level required for a finding of duress. Thus, Hoffman may not successfully claim that she signed the agreement under duress.

C. Unconscionability
Hoffman next argues that the agreement should be declared void because it was unconscionable. Specifically, Hoffman argues that the visitation time she was awarded in the agreement was no greater than she would have been given pursuant to the Indiana Parenting Time Guidelines. Hoffman also contends that inasmuch as Heim is a millionaire, the agreement's provision *991 that he pay only one-third of her attorney's fees is inequitable.
We have held that "a contract is unconscionable if there was a gross disparity in bargaining power which led the party with the lesser bargaining power to sign a contract unwillingly or unaware of its terms and the contract is one that no sensible person, not under delusion, duress or distress would accept." Justus v. Justus, 581 N.E.2d 1265, 1272 (Ind.Ct.App. 1992). The party claiming that a contract is unconscionable bears the burden of establishing that the party seeking to enforce the contract had "a prodigious amount of bargaining power" and used that power to obtain terms that caused the party seeking to void the contract "great hardship and risk." Weaver v. Am. Oil Co., 257 Ind. 458, 465, 276 N.E.2d 144, 148 (1971).
Hoffman first argues that she "received no benefit" from the agreement. Appellant's Br. p. 19. She contends that, had she proceeded to a hearing, she "was unlikely to receive an award of visitation less than that provided by the Guidelines." Appellant's Br. p. 19. Nowhere does Hoffman charge that she received less parenting time than that prescribed by the Guidelines, given K.R.H.'s age. Rather, Hoffman indicates that, when K.R.H. is three years old, her parenting time will be less than that recommended by the Guidelines. Appellant's Br. p. 20.
In considering Hoffman's argument regarding the visitation time granted to her in the agreement, we first note that parties are free and encouraged to negotiate agreements regarding custody and parental visits. Keen v. Keen, 629 N.E.2d 938, 941 (Ind.Ct.App.1994). The only requirement in this regard is that the agreement be in the child's best interest. Id. While the Indiana Parenting Time Guidelines provide courts with specific parenting times for a child of a given age, the Guidelines themselves state that they "are not meant to foreclose parents from agreeing to, or the court from granting, such additional or reduced parenting time as may be reasonable in any given case." Indiana Parenting Time Guidelines, Preamble, cmt. 2.
In this case, Hoffman agreed to the parenting time terms and in fact had asked for, and received, an extra hour of visitation following the draft of the agreement. Appellant's App. p. 484. Additionally, the trial court found that the agreement's parenting time provision was in K.R.H.'s best interest. Tr. p. 9. The agreement is in keeping with our policy of encouraging parties to negotiate a settlement regarding custody and parental visits. Keen, 629 N.E.2d at 941. Given the parenting time provision of the agreementwhich gives Hoffman parenting time with K.R.H. every week and overnight visits every other weekendwe cannot say that the agreement's parenting time provision is such that "no sensible person, not under delusion, duress or distress would accept." Justus, 581 N.E.2d at 1272.
Turning to the provision requiring that Heim pay one-third of Hoffman's attorney's fees, we note that an award of attorney's fees during a domestic relations action is left to the discretion of the trial court. Ind.Code § 31-15-10-1; Thompson v. Thompson, 696 N.E.2d 80, 84 (Ind.Ct.App.1998). "When making an award of attorney fees, the trial court must consider the resources of the parties, their economic condition, the ability of the parties to engage in gainful employment and to earn adequate income, and such factors that bear on the reasonableness of the award." Thompson, 696 N.E.2d at 84. In Thompson, the trial court summarily denied appellate attorney's fees to the wife *992 without a hearing. In upholding the trial court's decision, we noted that "the trial court was well aware of the parties' respective incomes and other relevant circumstances." Id. at 84-85.
Here, the trial court was aware of the parties' incomes, a fact that Hoffman does not deny. Appellant's App. p. 218-22. If this case had gone to trial, the trial court could have decided to award Hoffman a greater amount of attorney's fees than provided for in the agreement, but the trial court could also have awarded Hoffman no attorney's fees. Additionally, we note that the trial court already had provided a separate award of $5500.00 in attorney's fees to Hoffman. In agreeing to accept one-third of her attorney's fees, Hoffman was eliminating the risk that she would be awarded no fees. Again, Hoffman has failed to show that her agreement to accept Heim's payment of one-third of her attorney fees was one that "no sensible person, not under delusion, duress or distress would accept." Justus, 581 N.E.2d at 1272.

D. Finalized Agreement
Hoffman contends that the agreement signed by the parties was not final because "the parties contemplated creation of a separate, final settlement document." Appellant's Br. p. 26. Thus, Hoffman argues, the trial court unlawfully incorporated the agreement into its order.
We acknowledge, as does Heim, that the parties in this case contemplated a further document. Appellee's Br. p. 23. However, we have held that it is not error for a trial court to incorporate a document into an order even if the parties contemplated a further document as long as a meeting of the minds has occurred. Reno, 734 N.E.2d at 1099. In Reno, the parties agreed that a final, typed agreement was to be signed. The parties did not sign the typed agreement that was submitted to the trial court but did sign the mediator's notes. We held that the signed notes were sufficient to demonstrate that a meeting of the minds occurred. Id.
Here, even though the contemplated final document was not produced, the parties signed a typed agreement entitled "BINDING TERMS SHEET" produced by their attorneys. Appellant's App. p. 484. Moreover, each page of the agreement was initialed. The "BINDING TERMS SHEET" is much more of a "finalized" agreement than were the mediator's notes in Reno inasmuch as the "BINDING TERMS SHEET" was typed, signed by both parties, and submitted to the trial court. Consequently, we find that the trial court committed no error by incorporating the terms included in the "BINDING TERMS SHEET" in its order because the agreement sufficiently showed that a meeting of the minds took place.

III. Best Interest of the Child
Finally, Hoffman contends that the trial court erred in incorporating the agreement in its order because the agreement is not in K.R.H.'s best interests. The agreement provides that Hoffman, who is not Roman Catholic, cannot take K.R.H. with her to church unless the church is within the Roman Catholic faith. Thus, Hoffman argues that the agreement must be set aside because the majority of states uphold such restrictions "only when there is a clear and affirmative showing that exposure to the parents' conflicting religions will cause substantial harm to the child." Appellant's Br. p. 24-25.
In addressing Hoffman's contention, we note that our General Assembly has stated that the custodial parent is to "determine the child's upbringing, including the child's education, health care, and *993 religious training." Ind.Code § 31-17-2-17 (emphasis added). Furthermore, we have held that the custodial parent enjoys "the right to determine the religious training of his minor children." Johnson v. Nation, 615 N.E.2d 141, 145 (Ind.Ct.App. 1993). While the statute does go on to state that limits on the custodial parent's authority may be made if a trial court finds that the child's physical or emotional health is threatened, Hoffman never alleged that the absence of such limits would endanger K.R.H.'s physical or emotional health. In short, Hoffman failed to demonstrate that the agreement's religious provision in some way injures K.R.H. Thus, Hoffman has failed to show that the agreement is not in K.R.H.'s best interests.

CONCLUSION
In light of the disposition of the issues set forth above, we conclude that the trial court did not err in refusing to order a hearing with respect to the repudiated agreement between the parties. We also find that the agreement between Hoffman and Heim was not governed by the Indiana Rules of Alternative Dispute Resolution, was not obtained by duress, and was not unconscionable. We also find that the agreement was final and that it is in K.R.H.'s best interest.
Affirmed.
RILEY and MATHIAS, JJ., concur.
NOTES
[1] Indiana Trial Rule 53.3 states, in relevant part, "In the event a court fails for forty-five (45) days to set a Motion to Correct Error for hearing, or fails to rule on a Motion to Correct Error within thirty (30) days after it was heard or forty-five (45) days after it was filed, if no hearing is required, the pending Motion to Correct Error shall be deemed denied."