**In re the Matter of Paternity A.G.R., Child, By Next Friend, Frank A. CONFLENTI, Appellant–Petitioner,**

**v.**

**Alice I. (Robbins) HUFF, Appellee–Respondent.**

**No. 49A02–0401–JV–7.**

Court of Appeals of Indiana.

Aug. 19, 2004.

Rehearing Denied Oct. 20, 2004.

Kimberly A. Jackson, Jensen & Associates, Indianapolis, IN, Attorney for Appellant.

Jan B. Berg, Indianapolis, IN, Attorney for Appellee.

## OPINION

KIRSCH, Chief Judge.

Frank A. Conflenti ("Father") appeals the trial court's order in his dispute with Alice I. (Robbins) Huff ("Mother") over

the custody of the parties' child, A.G.R. He raises the following issues for review:

I. Whether the trial court erred in imposing conditions and scheduling Father's parenting time with A.G.R. in accordance with Mother and A.G.R.'s practices as Jehovah's Witnesses.

II. Whether the trial court erred in ordering Father to be solely responsible for transportation for parenting time with A.G.R. but failing to award Father a credit for providing transportation.

III. Whether the trial court erred in ordering parenting time in accordance with the Indiana Parenting Time Guidelines during summer vacations and the Marion County Visitation Guidelines during the school year.

IV. Whether the trial court erred in calculating retroactive child support.

V. Whether the trial court erred in ordering Father to pay $7,500.00 in Mother's attorney's fees.

VI. Whether the trial court erred in failing to order Mother to provide information to Father regarding A.G.R.'s medical care and treatment.

VII. Whether the trial court erred in failing to order Mother to provide Father with additional contact information beyond her home telephone number, such as an e-mail address or a cell phone number.

We affirm in part and reverse and remand in part.

## FACTS AND PROCEDURAL HISTORY

In 1994, Father and Mother had a relationship that produced A.G.R. At the time, Father was married to another woman. In 1996, Father established paternity of A.G.R. and was awarded visitation; Mother maintained custody. At some point, Father and his wife divorced, and both Mother and Father have subsequently married others. Over the years, the parties' relationship has been extremely contentious, and both parties have filed numerous petitions and motions. One subject that seems to provoke a good deal of controversy is Mother's decision to raise A.G.R. as a Jehovah's Witness and the observance of A.G.R.'s religious tenets while he is in Father's custody.

In April 2002, Father filed a petition to modify custody. After hearings on July 21, 2003 and August 11, 2003, the trial court issued an order setting Father's parenting time in accordance with Mother's and A.G.R.'s religious beliefs and ordering the payment of child support and Mother's attorney's fees.

Father appeals.

## DISCUSSION AND DECISION

 The trial court entered findings of fact and conclusions pursuant to Mother's request. A judgment entered with requested findings will be reversed only if it is clearly erroneous. *In re Paternity of V.A.M.C.*, 768 N.E.2d 990, 999 (Ind.Ct. App.2002), *aff'd on reh'g* 773 N.E.2d 359. A judgment is clearly erroneous if it is unsupported by the conclusions, and conclusions are clearly erroneous if they are unsupported by the findings. *Id.*

### I. *Restrictions on parenting time*

Father first argues that the trial court erred in placing "substantial restrictions on Father's parenting time which are unsupported by the record, unnecessary, ambiguous, overly broad, and not authorized by either statute or precedent or court rule." *Appellant's Brief* at 14. The trial

court's order specifically prohibits Father from encouraging or allowing A.G.R. to participate in holiday-related activities, such as giving and receiving gifts and trick-or-treating. In addition, the trial court ordered Father not to have parenting time with A.G.R. on Christmas Eve or Day.

▬▬▬ In all parenting time controversies, courts are required to give foremost consideration to the best interests of the child. *Marlow v. Marlow*, 702 N.E.2d 733, 735 (Ind.Ct.App.1998), *trans. denied* (1999). When reviewing the trial court's resolution of a parenting time issue, we reverse only when the trial court manifestly abused its discretion. *Id.* If the record reveals a rational basis supporting the trial court's determination, no abuse of discretion occurred. *Id.* We will not reweigh evidence or reassess the credibility of witnesses. *Id.*

▬▬▬ IC 31–14–14–1 provides that a non-custodial parent is entitled to reasonable parenting time unless the court finds, after a hearing, that parenting time might endanger the child's physical health and well-being or significantly impair the child's emotional development. However, Father has not been denied parenting time with A.G.R. Rather, he has been ordered to avoid activities that conflict with A.G.R.'s religious beliefs. The custodial parent enjoys the right to determine the religious training of his or her minor children. *In re Paternity of K.R.H.*, 784 N.E.2d 985, 993 (Ind.Ct.App. 2003); *Overman v. Overman*, 497 N.E.2d 618, 619 (Ind.Ct.App.1986), *trans. denied* (1987). A non-custodial parent may not impose that parent's own religious views on the child, and the custodial parent's right to choose religious training is paramount so long as the training does not unreasonably interfere with the non-custodial parent's right to parenting time.

*Periquet–Febres v. Febres*, 659 N.E.2d 602, 606 (Ind.Ct.App.1995), *trans. denied* (1996); *Johnson v. Nation*, 615 N.E.2d 141, 145–46 (Ind.Ct.App.1993); *Overman*, 497 N.E.2d at 619. For instance, as long as the interference is reasonable, the non-custodial parent can be required to transport the child to religious events. *Periquet–Febres*, 659 N.E.2d at 606. However, when such interferences are unreasonable or when the custodial parent is using religion to interfere with the noncustodial parent's parenting time, the court will not alter the parenting time schedule. *Id.* We have explained that the custodial parent's right to determine the child's religious training can be limited only upon motion of the non-custodial parent demonstrating that the child's physical health or emotional development would be significantly impaired unless the custodial parent's rights were limited. *Overman,* 497 N.E.2d at 619.

In *K.R.H.*, 784 N.E.2d at 992–93, a non-custodial parent challenged the trial court's order that restricted her from taking her child to church unless the church was within the Roman Catholic faith. The mother objected because she was not of the Roman Catholic faith, and argued that the restriction should be set aside because there was no clear and affirmative showing that exposure to the parents' conflicting religions would cause substantial harm to the child. We explained that the custodial parent has the right to determine the child's upbringing, including the child's education, health care, and religious training. We noted that the statute granting this authority states that limits on the custodial parent's authority may be made if a trial court finds that the child's physical or emotional health is threatened. Because the mother never alleged that the absence of such limits would endanger the child's physical or emotional health, we held that

she failed to demonstrate that the provision in some way injured the child or that it was not in the child's best interests. *Id.*

■ Similarly, here, the evidence showed that Mother and A.G.R. are Jehovah's Witnesses, while Father is not. Several tenets of the Jehovah's Witness faith, including prohibitions on gift giving and receiving and the celebration of all holidays, have caused serious discord between the parties. The evidence showed that Father has not always handled this issue with sensitivity to A.G.R.'s feelings or with respect for Mother's choice. Moreover, Father has failed to show that the provisions of the trial court's order which enforce A.G.R.'s religious observances in some way injure him or are not in his best interest. Further, the visitation schedule the trial court imposed to avoid interference with Mother's choice of religious upbringing for A.G.R. does not constitute a restriction. The schedule for Father's visitation is an incidental result of Mother's right to make religious determinations for A.G.R. The conditions are reasonable, and the trial court did not abuse its discretion.

■ Father also argues that the order should be vacated because Mother never filed a petition for modification seeking changes in holiday parenting time. However, Father failed to raise this objection before the trial court, and it is therefore unavailable to him now on appeal. *GKC Indiana Theatres, Inc. v. Elk Retail Investors, LLC.*, 764 N.E.2d 647, 651 (Ind.Ct. App.2002) (arguments not raised at the trial court are waived on appeal).

■ Father further contends that the order should be vacated because it is overbroad and unworkable. We find the order to be workable, as has been demonstrated by the parties in the past. We further find that the order is not overbroad. The order prohibits the celebration of holidays and includes a non-exhaustive list. Mother testified that A.G.R.'s religion prohibited the celebration of holidays. This testimony supports the trial court's order.

## II. Transportation responsibility with no corresponding credit

■ Father next argues that the trial court erred in ordering him to be solely responsible for transportation for parenting time with A.G.R. but in failing to award him a credit for providing the transportation. However, Father agreed to assume all of the transportation duties in exchange for extended visitation with A.G.R. from Sunday evening to Monday morning. Moreover, the evidence shows that the parties were unable to cooperate sufficiently to coordinate shared transportation. Making Father solely responsible for transportation for A.G.R. eliminates an opportunity for conflict between Mother and Father and was not an abuse of discretion.

Nonetheless, Father argues that the trial court is in effect punishing him for moving further away from Mother's residence by making him solely responsible for transportation without a corresponding credit. While the fact of Father's move alone would not have been sufficient to support the trial court's order, the trial court did not abuse its discretion in light of the parties' history of difficulties in sharing transportation responsibilities. The trial court did not err.

## III. Use of multiple guidelines

■ Father next maintains that the trial court erred in ordering parenting time in accordance with the Indiana Parenting Time Guidelines during summer vacations and the Marion County Visitation Guidelines during the school year. He argues that this creates a conflict and renders the resulting order ambiguous. We see no such conflict. The order states that

summer parenting time is governed by the Indiana Parenting Time Guidelines with the exception that Mother shall have A.G.R. for the two consecutive weeks before each new school year begins. During A.G.R.'s school year, the Marion County Guidelines apply. While each set of guidelines has its own holiday schedule, this does not create ambiguity. Rather, holidays occurring during A.G.R.'s summer vacation are governed by the Indiana Parenting Time Guidelines, while holidays occurring during the school year are governed by the Marion County Visitation Guidelines. The trial court did not err.

### IV. Child support calculation

■ Father next asserts that the trial court erred in calculating retroactive child support. Decisions regarding child support rest within the sound discretion of the trial court. *Haley v. Haley,* 771 N.E.2d 743, 752 (Ind.Ct.App.2002). We will reverse only for an abuse of discretion or if the trial court's determination is contrary to law. *Id.* A trial court has the discretionary power to make a modification for child support relate back to the date the petition to modify is filed, or any date thereafter. *Id.*

■ Father first contends that the trial court erred in adopting Mother's child support worksheets. However, the court is within its discretion to adopt the figures supplied by a party in fashioning its child support order. *Dye v. Young,* 655 N.E.2d 549, 550 (Ind.Ct.App.1995). He further argues that the trial court erred because it increased the amount of the retroactive child support obligation, but failed to order increased abatements for this period. Father now contends that he is entitled to a larger abatement than the amount he was paid. We rejected precisely this argument in *Claypool v. Claypool,* 712 N.E.2d 1104, 1108 n. 3 (Ind.Ct.App.1999), *trans. denied*

(2000), where we explained that the determination of the appropriate amount of child support abatement is a matter for the sound discretion of the trial court. The trial court did not abuse its discretion.

■ Father also contends that the trial court erred in excluding the cost of family counseling from ordinary health expenses subject to the rule requiring Mother to pay the first six percent of such expenses. Father points out that the same expense was treated as an ordinary health expense in his dissolution proceedings with respect to his three daughters. However, we see no abuse of discretion in weighing the circumstances of each case and reaching different conclusions. Moreover, the trial court ordered the parties to share the expense of the counseling in roughly the same percentage as their incomes and A.G.R.'s other health care expenses. The trial court did not err.

### V. Attorney's fees

■ Father also argues that the trial court erred in ordering Father to pay $7,500.00 in Mother's attorney's fees. IC 31–14–18–2 provides that a court may award attorney's fees in a paternity action. An award of attorney's fees during a domestic relations action is left to the discretion of the trial court. *K.R.H.,* 784 N.E.2d at 991 (citing IC 31–15–10–1; *Thompson v. Thompson,* 696 N.E.2d 80, 84 (Ind.Ct.App. 1998)). When making an award of attorney's fees, the trial court must consider the resources of the parties, their economic condition, the ability of the parties to engage in gainful employment and to earn adequate income, and such factors that bear on the reasonableness of the award. *Id.; Haley,* 771 N.E.2d at 753. Any misconduct on the part of one party which causes the other party to directly incur additional fees may be taken into consideration. *Haley,* 771 N.E.2d at 753. When

one party is in a superior position to pay fees over the other party, an award of attorney fees is proper. *Id.*

In this case, the trial court did not abuse its discretion. The evidence shows that Father's annual income is more than twice that of Mother. Moreover, the trial court found that Father filed multiple, frivolous pleadings and failed to fully cooperate in the discovery process. These findings are supported by the evidence that Father filed fourteen pleadings between 1999 and the hearings in this matter and that Father's failure to cooperate in discovery caused Mother to incur additional attorney's fees. The trial court did not abuse its discretion.

### VI. Exchange of medical information

Father asserts that the trial court erred in failing to order Mother to provide information to Father regarding A.G.R.'s medical care and treatment. The trial court ordered Father to notify Mother within sixty minutes of any emergency for which A.G.R. requires medical care and explain to her the nature of the emergency and the location where A.G.R. is receiving treatment, but failed to order Mother to do likewise.

The Indiana Parenting Time Guidelines provide that "[e]ach parent shall immediately notify the other of any medical emergencies or illness of the child that requires medical attention." *Ind. Parenting Time Guidelines* I(D)(4). Moreover, Mother, as the custodial parent, has the obligation to communicate to Father when A.G.R. undergoes evaluation or treatment for a health condition. *Id.* Thus, Mother and Father have reciprocal duties to exchange information with one another, and the trial court should have ordered both Mother and Father to exchange such information consistent with the Indiana Parenting Time Guidelines. Accordingly, we reverse the trial court's decision on this issue and remand to the trial court for entry of an order requiring both Mother and Father promptly to provide medical information about A.G.R. to the other party.[1]

### VII. Exchange of contact information

Finally, Father maintains that the trial court erred in failing to order Mother to provide him with additional contact information beyond her home telephone number, such as an e-mail address or a cell phone number.

Parents have a duty to exchange information regarding their children. *Ind. Parenting Time Guidelines*, Section I(D) Based on the long history of conflict between Mother and Father, it makes some sense to facilitate the parties' communication by providing additional means, such as e-mail. However, there is no evidence in the record that the current contact information is inadequate to allow communication between the parties, and we cannot say that the trial court abused its discretion in failing to require the parties to exchange such information.

Affirmed in part, reversed and remanded in part.

NAJAM, J., and RILEY, J., concur.

1. To clarify, although we cite the Indiana Parenting Time Guidelines, the reciprocal duties of Mother and Father to provide medical information exist all year, not only during the part of the year that their parenting time is governed by the Guidelines.