## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 09 2016, 8:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jane G. Cotton
Anderson, Indiana

ATTORNEY FOR APPELLEE

David W. Stone IV
Stone Law Office & Legal
Research
Anderson, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Connie Harrison,

*Appellant-Respondent,*

v.

Hubert Harrison,

*Appellee-Petitioner*

September 9, 2016

Court of Appeals Case No.
48A02-1512-DR-2274

Appeal from the Madison Circuit Court

The Honorable Angela Warner Sims, Judge

The Honorable Jason Childers, Commissioner

Trial Court Cause No.
48C01-1507-DR-450

**Crone, Judge.**

## Case Summary

Connie Harrison ("Wife") appeals the trial court's denial of her petition to revoke and/or modify her property settlement agreement with Hubert Harrison ("Husband"), which was subsequently approved by the trial court and incorporated into the decree dissolving the parties' marriage. Wife claims that the trial court abused its discretion in refusing to revoke or modify the property settlement agreement prior to incorporating it into the dissolution decree. Finding no abuse of discretion, we affirm.

## Facts and Procedural History

Husband and Wife were married on May 6, 1977.[1] They have one adult son. In May 2015, Wife told Husband that she wanted a divorce. Husband then hired attorney Ronald McNabney to handle the divorce and to prepare a property settlement agreement. Prior to meeting with McNabney, Husband instructed Wife to write down everything that she wanted on a piece of paper and to bring it to the meeting. The handwritten note, dated June 24, 2015, and signed by Wife, provided that Wife wanted $80,000 cash, her 2008 GMC Envoy vehicle, and various pieces of furniture and personal items from the marital residence. The last sentence of the note stated, "The Rest of the House will be [Husband's]." Husband's Ex. A. On the back of the note, Wife explained that Husband was "a good man" but that she needed "out of this

---

[1] The record indicates that the parties were previously married to each other, divorced in 1975, and remarried in 1977.

marriage" and that "now it is time [for] me to walk while [we can] still talk together." *Id.*

[3] The parties later met at McNabney's office, and Wife showed Husband and McNabney her handwritten note. During the meeting, McNabney advised Wife that he was Husband's attorney and not hers, that she was free to get her own attorney, and that he could not advise her "whether or not this agreement is good or bad." Tr. at 33. He told Wife that he would "reduce what you've given me to writing" and that if he did not "get it right," Wife could "correct it" until she felt comfortable. *Id.* Following the meeting, McNabney drafted a "Settlement Agreement and Waiver of Final Hearing" ("Settlement Agreement") in which the parties agreed to the disposition of marital property. Appellant's App. at 11-13. Pursuant to the Settlement Agreement, Husband was awarded the marital residence, subject to debt, two vehicles, subject to debt, a motorcycle and boat which had no debt, his GM pension, the remainder of his IRA after an $80,000 withdrawal for Wife plus tax consequences, and the joint checking, savings, and Christmas club accounts at Lampco. All joint charge accounts would be closed with Husband responsible for all outstanding balances. Wife was awarded $80,000 cash, her 2008 GMC Envoy, subject to debt, as well as all the furniture and personal property that she requested in her handwritten note. All other personal property was set aside for Husband. Husband signed the Settlement Agreement on July 11, 2015. Wife returned to McNabney's office on July 16, 2015, read the Settlement Agreement, and signed it. The Settlement Agreement stated that it constituted the "settlement

of all issues" and that both parties agreed "that there are no contested issues left for the Court to resolve in this Cause." *Id*. at 13.

[4] On July 21, 2015, Husband filed a petition for dissolution of marriage. On July 30, 2015, Husband filed the Settlement Agreement with the trial court, and the trial court approved the Settlement Agreement on July 31, 2105. On August 19, 2015, counsel appeared on behalf of Wife and filed a motion to revoke, set aside, reconsider and/or modify the Settlement Agreement arguing that the trial court violated public policy in approving the Settlement Agreement within sixty days of the filing of the dissolution petition. Wife further argued that the property disposition is inequitable and that she was "unable to understand the magnitude and consequences of her actions at the time she signed the [S]ettlement [A]greement." *Id*. at 23.

[5] A hearing was held on October 6, 2015. Thereafter, the trial court entered its findings of fact and conclusions thereon denying Wife's petition. Specifically, the trial court found in relevant part:

> 6. The Settlement Agreement was the product of Husband and Wife jointly meeting with counsel [McNabney] at his office and discussing the terms of the dissolution. Wife provided to McNabney a written list of those items she wanted in the divorce, as well as her reasons for wanting out of the marriage. (Respondent's Ex. A.) Wife's items, including a lump sum payment of $80,000.00, were incorporated into the Settlement Agreement. Wife returned to McNabney's office alone several days after the parties' meeting and executed the Settlement Agreement.

7. Wife made no claim of any physical restraint placed on her or any threat of physical injury if she did not sign the Settlement Agreement.

8. Wife made no claim that she was unaware of any marital assets at the time she executed the Settlement Agreement. Rather, Wife testified at length about her knowledge of the marital assets including Husband's veteran's pension, his GM pension, his social security benefits, the equity in the marital residence, an estimate of the value of Husband's 401(K), and 62 acres of farm land.

9. Although Wife summarized her medical ailments, she presented no evidence of any mental, emotional or physical problems that would render her incompetent to render a binding agreement.

10. Susan Barton, the secretary for McNabney, testified that she was present throughout the meeting with the parties when the Settlement Agreement and Wife's list of requests were discussed. She denied that McNabney was rude to Wife, denied that he told Wife to speak only when spoken to and otherwise denied all of Wife's claims regarding any improper conduct at the meeting.

11. When meeting with the parties, McNabney informed them that he did not know whether the proposed settlement agreement was a good deal for either of them since he was not aware of their assets. McNabney further informed Wife that he did not represent her.

12. Wife had an opportunity to reflect on the terms of the Settlement Agreement for a number of days prior to returning to McNabney's office to sign the Settlement Agreement. She returned to McNabney's office alone and signed the agreement

after having an opportunity to read it and point out any errors and ask any questions she may have had.

*Id*. at 5-6.

[6]     Based upon those findings, the trial court concluded in relevant part,

> 4. Based upon the findings set forth herein, the Court concludes that the Settlement Agreement was not procured through fraud or duress, nor was it the result of a manifest inequity. Wife was fully aware of the parties' marital estate. Wife's specific requests concerning the distribution of the marital estate were incorporated into the Settlement Agreement during her meeting with McNabney. Wife was given several days to consider the Settlement Agreement and voluntarily returned to McNabney's office to sign the Settlement Agreement. There is no evidence that Wife was incompetent or otherwise mentally unable to understand the terms of the Settlement Agreement. Lastly, Wife set forth in writing a number of reasons for wanting out of the marriage. These reasons were unrelated to monetary considerations; instead, they suggest why Wife was satisfied with a Settlement Agreement that gave Husband a larger share of the marital estate.

*Id*. at 7.

[7]     Accordingly, the trial court denied Wife's petition to revoke and/or modify the Settlement Agreement and entered its decree of dissolution of marriage, which incorporated the Settlement Agreement. This appeal ensued.

# Discussion and Decision

[8]     Wife claims that the trial court abused its discretion in denying her petition to revoke and/or modify the Settlement Agreement prior to incorporating it into the dissolution decree. In making its decision, the trial court entered findings of fact and conclusions thereon at Husband's request. When a trial court has made findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52, we apply the following two-tiered standard of review: whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions thereon. *Campbell v. Campbell,* 993 N.E.2d 205, 209 (Ind. Ct. App. 2013), *trans. denied.* We will set aside findings of fact only if they are clearly erroneous, which occurs if the record contains no facts to support a finding either directly or by inference. *Id.* "We must defer to the trial court's ability to assess the credibility of witnesses and will not reweigh the evidence, and we must consider only the evidence most favorable to the judgment along with all reasonable inferences drawn in favor of the judgment." *Crider v. Crider*, 15 N.E.3d 1042, 1053 (Ind. Ct. App. 2014), *trans. denied*. "It is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal." *Campbell,* 993 N.E.2d at 209.

[9]     It is well settled that "the public policy of this state generally favors the freedom of contract between private parties." *Pond v. Pond*, 700 N.E.2d 1130, 1136 (Ind. 1998). Regarding dissolution of marriage, our legislature has specifically provided that "[t]o promote the amicable settlements of disputes that have

arisen or may arise between the parties to a marriage attendant upon the dissolution of their marriage," the parties may enter written agreements that include provisions for "the disposition of any property." Ind. Code § 31-15-2-17. The trial court has the discretion to accept, modify, or reject a negotiated settlement agreement, and we review that decision only for an abuse of discretion *Gabriel v. Gabriel*, 654 N.E.2d 894, 897 (Ind. Ct. App. 1995), *trans. denied* (1996); *see* Ind. Code § 31-15-2-17(b)(2).

[10] In *Voigt v. Voigt*, 670 N.E.2d 1271, 1277 (Ind. 1996), our supreme court cautioned that "the power to disapprove a settlement agreement must be exercised with great restraint. A trial judge should not reject such agreements just because she believes she could draft a better one." *Id.* There is a very "strong presumption of enforceability" of these agreements, and "Indiana courts have 'not hesitated to enforce a divorce settlement agreement which would have been in excess of the divorce court's authority had it been crafted by the divorce court and which was shown to be, over time, grossly inequitable.'" *Pond*, 700 N.E.2d at 1136 (citation omitted). Accordingly "[i]n reviewing a settlement agreement, a court should concern itself only with fraud, duress, and other imperfections of consent, or with manifest inequities, particularly those deriving from great disparities in bargaining power." *Voigt*, 670 N.E.2d at 1278 (internal citation omitted).

[11] Here, Wife concedes that there is no evidence that the Settlement Agreement was procured by fraud or duress. Instead, she maintains that the trial court should have set aside the agreement because Husband "exercised undue

influence in the procurement of Wife's signature" on the agreement. Appellant's Br. at 15. Wife's assertions of undue influence are belied by the evidence. As found by the trial court, the Settlement Agreement simply incorporated Wife's specific requests concerning the distribution of the marital estate. She was admittedly neither forced nor pressured into signing the agreement, and after having several days to reflect on the terms of the agreement, she voluntarily returned to McNabney's office without Husband to review and sign the agreement. Contrary to Wife's assertions, the trial court's findings and conclusions make clear that, after considering all the evidence presented by the parties, the court found no indication that the Settlement Agreement was a product of anything other than Wife's specific requests based upon her full awareness of the parties' assets.

[12] Rather than challenge the evidence supporting the trial court's findings, Wife instead makes vague references to other evidence in the record which she claims indicates that she suffered from "weakness of mind" which made her unable "to protect her own interests," and which resulted in a manifestly unequal property distribution. *Id.* at 17-18. However, based upon the evidence and the testimony presented, the trial court found no manifest inequity and concluded that Wife was fully competent to understand the agreement and had reasons unrelated to monetary considerations that suggested that she was satisfied with

an agreement that gave Husband a larger share of the marital estate.[2] Wife merely invites us to reweigh the evidence and reassess witness credibility, tasks not within our authority on appeal.

[13] Wife also maintains that the trial court's decision to not allow her to revoke the Settlement Agreement "is contrary to statute and contrary to the public interest" in light of the fact that she filed her petition to revoke within sixty days of the filing of the dissolution petition. Appellant's Br. at 19. Wife points to Indiana Code Section 31-15-2-13, which permits a trial court to enter a summary dissolution decree without a hearing "[a]t least sixty (60) days after a petition is filed in an action for dissolution of marriage" if both parties have filed a written and signed waiver of final hearing, and filed either a written settlement agreement or a statement that there are no contested issues in the case.[3] She urges that the trial court was without statutory authority to approve the Settlement Agreement before the passage of the sixty-day period, and because the Settlement Agreement had no legal efficacy until incorporated into the dissolution decree, it follows that "a party should be allowed to rescind or revoke a signed settlement agreement before the passage of the sixty day

---

[2] Although Wife baldly asserts that the Settlement Agreement provided for a manifestly unequal "approximate" 90/10 split, *see* Appellant's Br. at 18, she cites conflicting evidence as well as evidence outside the record to support her claim. The record is inconclusive regarding the true value of the marital estate.

[3] Wife briefly argues that her waiver of final hearing that was part of the Settlement Agreement was invalid because it was filed prior to the petition for dissolution, and therefore there was no action pending, and thus no hearing to waive at the time it was filed. Wife did not raise this issue in her petition to revoke, and therefore the issue is waived on appeal. *See Heaphy v. Ogle*, 896 N.E.2d 551, 557 (Ind. Ct. App. 2008) (failure to raise an issue before trial court results in waiver of that issue on appeal). In any event, Wife had the opportunity to be heard and to present all of her substantive claims at the hearing on the petition to revoke.

period." Appellant's Br. at 21. She claims that such a result is necessary to protect divorcing parties from being locked into "early agreements based on emotions." *Id*.

[14] We note that there is nothing in the language of Indiana Code Section 31-15-2-13 that prohibits a trial court from signing and approving a property settlement agreement during the sixty-day waiting period after the filing of the dissolution petition. Wife is correct, however, that a written property settlement agreement "in itself is not a legal instrument binding on the parties, no matter how formally executed, until it is approved by the court *and* incorporated and merged into the [dissolution] decree." *Gabriel*, 654 N.E.2d at 898 (emphasis added) (citation omitted). Nonetheless, we have held that parties to a signed written property settlement agreement do not have an absolute right to repudiate prior to formal court approval and incorporation into the decree. *Reno v. Haler*, 734 N.E.2d 1095, 1101 (Ind. Ct. App. 2000) (citing *Gabriel*, 654 N.E.2d at 898). Indeed, we specifically observed that conferring such a right upon the parties "would thwart the public policy of favoring amicable settlement of disputes." *Id*. Thus, while a party is free to challenge a negotiated written property settlement agreement at a hearing, the trial court is not bound to reject the agreement absent evidence that convinces the court that the agreement should not be honored. *See id*. As stated above, the trial court here found no evidence of fraud, duress, other imperfections of consent, or manifest inequity. The trial court's decision to uphold the parties' Settlement Agreement was neither contrary to statute nor to the public interest. We

conclude that the evidence supports the trial court's findings of fact, and the findings support the conclusions thereon. Under the circumstances, we cannot say that the trial court abused its discretion in denying Wife's petition to revoke the Settlement Agreement.

[15] As a final matter, we address Wife's contention that the Settlement Agreement omitted a large marital asset, namely sixty-two acres of farmland, and therefore the trial court erred in failing to divide all the assets of the marriage in its dissolution decree incorporating the Settlement Agreement. *See Falatovics v. Falatovics*, 15 N.E.3d 108, 110 (Ind. Ct. App. 2014) (providing general discussion of Indiana's "one pot" theory which prohibits exclusion of any asset from the scope of trial court's power to divide and award). We observe that Wife did not bring this matter to the trial court's attention during the hearing on her petition to revoke and/or modify. To the extent that there is real estate that constitutes marital property that should have been disposed of in the dissolution decree, Wife may avail herself of the procedural mechanisms available to her

pursuant to Indiana Trial Rule 60(B) if she so chooses.[4]  The judgment of the trial court is affirmed.

[16]    Affirmed.


Kirsch, J., and May, J., concur.

---

[4] Trial Rule 60(B) provides in relevant part:

> On motion and upon such terms as are just the court may relieve a party or his legal representative from a judgment, including a judgment by default, for the following reasons:
>
>> (1) mistake, surprise, or excusable neglect;
>>
>> (2) any ground for a motion to correct error, including without limitation to newly discovered evidence, which by due diligence could not have been discovered in time to move for a motion to correct errors under Rule 59;
>>
>> (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;
>>
>> …
>>
>> (8) any reason justifying relief from the operation of the judgment, other than those reasons set forth in sub-paragraphs (1), (2), (3), and (4).
>
> The motion shall be filed within a reasonable time for reasons … (8), and not more than one year after the judgment, order or proceeding was entered or taken for reasons (1), (2), (3), and (4).