# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**BRYAN LEE CIYOU**
**LORI SCHMELTZER**
Ciyou & Dixon, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**MARK S. LENYO**
South Bend, Indiana



FILED

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE: THE MARRIAGE OF: | ) | |
| | ) | |
| CALEB E. CAMPBELL, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 71A03-1210-DR-420 |
| | ) | |
| ANNA P. CAMPBELL, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

### APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable David C. Chapleau, Judge
Cause No. 71D06-1103-DR-215

**June 19, 2013**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

Caleb E. Campbell ("Father") appeals the trial court's September 11, 2012 decree of dissolution of marriage which in part awarded custody of Z., the biological son of Father and adopted son of Anna P. Campbell ("Mother"), to Mother. Father raises three issues, which we revise and restate as:

I.      Whether the court erred in awarding custody of Z. to Mother;

II.     Whether the court erred in ordering that Z.'s grandparents participate in family therapy; and

III.    Whether the court erred in its division of the marital estate.

We affirm in part, reverse in part, and remand.

FACTS AND PROCEDURAL HISTORY

Father and Mother were married in June 2005. Father and Mother had two children together, and Mother adopted Z., who was Father's biological son from a previous relationship. On February 11, 2011, Mother filed a petition for dissolution of marriage. The parties each filed petitions for provisional relief regarding temporary custody of the children, parenting time, and payment of marital expenses. Following a hearing, on April 1, 2011, the court entered an order of provisional relief in which it found in part that the parties would share legal and physical custody of the children and that Mother would have use of the parties' tax refund, Father's Pell Grant funds, and the parties' joint bank deposits for necessary expenses and was to keep an accounting of the expenses. The parties subsequently filed motions related to the school the children would attend, parenting time, and Mother's relocation. The court held an evidentiary hearing on July 16, July 31, and August 6, 2012, related to the petition for dissolution and pending

2

motions at which the parties presented testimony and evidence. On August 20, 2012, the court entered a provisional order that the children attend school in the school district of Mother's residence pending the issuance of the final decree.

On September 11, 2012, the court issued a decree of dissolution of marriage finding that Mother should have sole legal and physical custody of the three children, dividing the marital estate, awarding Father parenting time according to the Indiana Parenting Time Guidelines, ordering Father to pay weekly child support, and ordering the parties, the children, Vicky Miles ("Maternal Grandmother"), and Bruce Dickey and Adele Dickey ("Paternal Grandparents") to participate in extensive family therapy. With respect to its custody determination, the court made the following findings:

Applying these factors [Ind. Code § 31-17-2-8] to the facts of this case:

(1)     the children are ages 11 [Z.], 6, and 4 and are two boys and a girl;

(2)     both parents wish to have physical custody of the minor children;

(3)     the wishes of the children have not been solicited based upon their age and none of the children have attained the age of 14;

(4)     the children interact well and have a loving relationship with both parents. Mother has been the stay-at-home parent of the children for most of their lives and the children are closely and emotionally bonded with Mother. The children have strong relationships with their siblings and although [Z.] is not a biological child of [] Mother, Mother has been the primary caretaker of [Z.] and [Z.'s] significant relationship with his siblings is a very important factor. [Z.] has made misrepresentations about actions in his life, as a method to seek attention, even negative attention, and that should be addressed in the counseling as ordered below. Hopefully, after the turmoil of this litigation is concluded, [Z.] will adjust

3

well; the other children are well adjusted. The extended families of both parties have rendered significant assistance. The children should continue to have contact in both homes with the extended family members.

(5)(A)  the children's adjustment to their home has been disrupted based upon the loss of the [] property because of financial issues;

(5)(B)  the children will not be attending the same Christian school they had attended by agreement of the parties as they neither nor other family members can afford to continue to pay the private educational expenses;

(5)(C)  the children's adjustment to the St. Joseph County community is well established even though they will be attending a new school this fall. The reality is that these young children are adaptable and should be able to make new friendships at their age and the school system in Mother's school district;

(6)  the mental and physical health of all of the individuals involved; [] Mother has a condition with her bladder that is painful and that requires significant medication, but Mother has properly administered the medication as prescribed and it is not an impediment to her for providing good parenting. However, Father on occasion, has abused alcohol and one occasion urinated on [Father's other son's] bed while he slept. Neither Father nor Mother has any other significant health issues other than the depression normally associated with the end of the marriage and loss of contact with the children. However, [Z.'s] biological mother, who has had limited contact with [Z.], suffers from significant mental illness and Mother has been reluctant to allow [Z.] to have unsupervised contact with the biological mother. Supervised contact with the biological mother of [Z.] should be continued, if Father wishes to allow that during his parenting time period and Mother, as legal custodian, does not object. Mother should have no obligation to continue that contact during her parenting time;

(7)  the evidence of a pattern of domestic or family violence by either parent; Father has not committed domestic violence against Mother, however, a protective order did issue as

4

> discussed and Father did violate the protection order by failing to comply with the prohibition of contact . . . at a music concert. Father was found in contempt.
>
> The Court has weighed the above factors in entering its order. Mother should have sole legal and physical custody.

Appellant's Appendix at 14-17. The court also found "that the relocation of Mother to Osceola from the 5th Street address is insignificant and Mother is authorized to continue residence is [sic] her current Osceola residence with the minor children." Id. at 17. The court later issued an order, at Mother's request, restoring Mother's maiden name.

## DISCUSSION

In issuing the decree of dissolution, the trial court entered findings of fact and conclusions of law. Where a trial court has made findings of fact, we apply the following two-tier standard of review: whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions thereon. Yanoff v. Muncy, 688 N.E.2d 1259, 1262 (Ind. 1997). Findings will be set aside if they are clearly erroneous. Id. Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference. Id. A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. Id. To determine that a finding or conclusion is clearly erroneous, our review of the evidence must leave us with the firm conviction that a mistake has been made. Id. A general judgment entered with findings will be affirmed if it can be sustained on any legal theory supported by the evidence. Id. As we conduct our review, we presume the trial court followed the law. Rea v. Shrover, 797 N.E.2d 1178, 1181 (Ind. Ct. App. 2003). It is not enough that the evidence might

5

support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal. Id.

I.

The first issue is whether the court erred in determining the custody of Z. A trial court's custody determination is afforded considerable deference as it is the trial court that sees the parties, observes their conduct and demeanor, and hears their testimony. Kondamuri v. Kondamuri, 852 N.E.2d 939, 945-946 (Ind. Ct. App. 2006). Thus, on review, we will not reweigh the evidence, judge the credibility of witnesses or substitute our judgment for that of the trial court. Id. at 946. We will reverse the trial court's custody determination only if it is clearly against the logic and effect of the facts and circumstances or the reasonable inferences drawn therefrom. Id.

Ind. Code § 31-17-2-8 provides:

> The court shall determine custody and enter a custody order in accordance with the best interests of the child. In determining the best interests of the child, there is no presumption favoring either parent. The court shall consider all relevant factors, including the following:
>
> (1)     The age and sex of the child.
>
> (2)     The wishes of the child's parent or parents.
>
> (3)     The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
>
> (4)     The interaction and interrelationship of the child with:
>
> > (A)     the child's parent or parents;
> >
> > (B)     the child's sibling; and

6

> (C) any other person who may significantly affect the child's best interests.
>
> (5) The child's adjustment to the child's:
>
> (A) home;
>
> (B) school; and
>
> (C) community.
>
> (6) The mental and physical health of all individuals involved.
>
> (7) Evidence of a pattern of domestic or family violence by either parent.
>
> (8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 8.5(b) of this chapter.

Ind. Code § 31-9-2-13 provides that "'[c]hild', for purposes of . . . IC 31-17, means a child or children of both parties to the marriage" and that "[t]he term includes the following: . . . (2) [c]hildren born or adopted during the marriage of the parties."

Father maintains that the court abused its discretion in granting Mother custody of Z., where there was substantial evidence that Z. requires special attention and care, Father was Z.'s only consistent parent since birth, and Mother treated Z. differently than the other two children and attempted to hinder Z.'s contact with his biological mother's family. Father asserts that the court abused its discretion in not making a finding that, even though Z. was eleven years old at the time of the decree, he was Mother's son for only two to three years prior to the decree. Father further argues that the evidence does not support the court's finding that Mother had been a primary caretaker for Z. since

7

Father had sole custody following his separation from Z.'s biological mother and both Father and Mother had joint custody during the pendency of the dissolution. Father also contends that the court abused its discretion in finding that Mother's relocation was insignificant and that Mother's illness and medication consumption does not affect her ability to parent the children. He asserts that the instances of his conduct related to alcohol use were isolated and remote to his present condition.

Mother maintains that the court did not err in awarding custody of Z. to her where she had been the primary caretaker for the children, the parties had a long history of being unable to work together or communicate amicably about the children, the children were not adjusting well to a shared custody arrangement, and Father had past problems related to drug and alcohol abuse. Mother argues that the trial court examined each factor required by Ind. Code § 31-17-2-8 and thoroughly reviewed the facts and various exhibits introduced at trial, including a detailed report prepared by the Domestic Relations Counseling Bureau (the "DRCB"). Mother argues that, at the time of trial, she had been raising Z. for at least seven years and that Z. was eleven years old, that the court thoughtfully considered the evidence with respect to the interaction or interrelationship of the children with their parents and siblings, that Mother took the children to counseling, that Mother was a stay-at-home parent for the children, that evidence established that Z.'s birth mother was bi-polar and has a serious mental illness, that Mother had to find affordable housing which she did, that Father's allegations that Mother misused prescription drugs was not supported by the evidence, and that Father ignores or discounts his DUI during the pendency of the divorce and his history throughout the

8

marriage in which he abused alcohol repeatedly which included an incident where he was so intoxicated he urinated on his son's bed.

At the evidentiary hearing, Mother testified regarding Father's use of alcohol during their marriage, the incident several years earlier when she woke up to find Father standing over one of the children's beds urinating, and that Father had a DUI the previous year. Mother gave testimony regarding her knowledge of Father's anger problems, the difficulty in communicating with him, that he would try to force Mother not to leave the room when she attempted to do so, and that he called her a "dumb b----," a "f------ wh---," and a "c---." Transcript at 50. Mother stated that she obtained a protective order against Father and that, in violation of the order, Father orchestrated people to bring photographs of his face on sticks to a concert where she was playing in the band, according to the report of the DRCB. Mother further testified regarding her health issues and medications. Mother said that she was a stay-at-home mother during the marriage and testified regarding her ability to care for the children, her work teaching music lessons, and the stable environment she provided for the children. Mother also testified regarding her actions of breaking a picture frame and breaking a window following a fight with Father. She further testified regarding the children's school, her housing arrangements, her move from the marital residence to another residence which had been purchased by Mother's parents due to financial concerns, and issues involving Z.'s counseling.

Mother also presented the DRCB report submitted by Patricia Starr which set forth the allegations Father made regarding Mother's treatment of Z. and the allegations

Mother made against Father and Paternal Grandparents regarding their treatment of her and Z., observations made by DRCB during home visits of the parties' residences, and a summary of information provided by Z.'s grandparents, a doctor who examined Z., a caseworker with Child Protective Services who had investigated previous allegations involving Z., and the director and a teacher at the school which Z. had attended.

Father testified and presented the testimony of Paternal Grandparents, Patricia Starr with the DRCB, and the sister of Z.'s biological mother. Father indicated that he did not have a substance abuse problem, had not completed a substance abuse assessment recommended by the DRCB, and no longer had an issue with alcohol. The sister of Z.'s biological mother testified regarding her observations of Z. and his relationship with Father and Mother, and Mother's attitude toward Z. spending time with his biological mother's family. Starr testified regarding her involvement with the parties and Z. and her observations. Paternal Grandparents testified regarding their involvement and interactions with Father, Mother, Z., and the other children.

While the evidence presented at the evidentiary hearing regarding the conduct of the parties and the evidence which may have had a bearing upon the factors considered by the trial court in making the custody determinations was conflicting in a number of respects, we note that this court may not reweigh the evidence or assess the credibility of the testimony. In custody disputes, the trial court "is often called upon to make Solomon-like decisions in complex and sensitive matters." Trost-Steffen v. Steffen, 772 N.E.2d 500, 509 (Ind. Ct. App. 2002) (citations omitted), reh'g denied, trans. denied. The trial court is in a position to see the parties, observe their conduct and demeanor, and hear

10

their testimony; therefore, its decision receives considerable deference in an appellate court. Id.

Based upon the court's findings and our review of the evidence and testimony set forth above and in the record, and especially in light of our preference for granting latitude and deference to our trial court judges in family law matters, we cannot say that the trial court abused its discretion in awarding custody to Mother or that the court's judgment is clearly erroneous.

## II.

The next issue is whether the trial court erred in ordering that Paternal Grandparents participate in family therapy. Father contends that the court lacked personal jurisdiction over Paternal Grandparents to order them to counseling related to their grandchildren, noting that the grandparents were not parties to the litigation. Mother argues that the court was within its discretion ordering the Paternal Grandparents as well as Maternal Grandmother to participate with Father, Mother, and the children in family therapy. Mother argues that Father waived his argument on appeal that the court did not have personal jurisdiction over Paternal Grandparents and Maternal Grandmother because the DRCB Report and its recommendations were offered into evidence by Mother and that Father failed to object to the recommendations. In his reply brief, Father argues that he could not have waived his argument as to the personal jurisdiction of Paternal Grandparents.

In its September 11, 2012 decree, the trial court ordered in part: "The parties and [Z.], [the parties' two other children], Ms. Vicky Miles [Maternal Grandmother], Ms.

11

Adele Dickey and Mr. Bruce Dickey [Paternal Grandparents] shall participate in extensive family therapy . . . ." Appellant's Appendix at 24. We observe that dissolution proceedings must comply with the Indiana Rules of Civil Procedure, see Ind. Code § 31-15-2-1, and that Ind. Trial Rule 4(A) provides that "[t]he court acquires jurisdiction over a party or person who under these rules commences or joins in the action, is served with summons or enters an appearance, or who is subjected to the power of the court under any other law." Further, Ind. Trial Rule 24 governs the right or ability to intervene in a matter and sets forth a procedure for doing so.[1] The record shows that Paternal Grandparents and Maternal Grandmother were not parties to the dissolution proceedings and had not intervened in the proceedings pursuant to the Indiana Rules of Civil Procedure. The parties do not point to the record to show that any of the Grandparents were served with a summons. Mother's argument that Father in some manner waived any objection to the court's personal jurisdiction over Paternal Grandparents is unpersuasive. Accordingly, we reverse the trial court's order that Paternal Grandparents and Maternal Grandmother participate in family therapy and remand for modification of the decree consistent with this opinion.

### III.

The next issue is whether the trial court erred in its division of certain marital property. Ind. Code § 31-15-7-4 governs the division of property in dissolution actions and requires that the trial court "divide the property in a just and reasonable manner."

---

[1] Ind. Trial Rule 24(C) provides in part that "[a] person desiring to intervene shall serve a motion to intervene upon the parties as provided in Rule 5" and that "[t]he motion shall state the grounds therefor and set forth or include by reference the claim, defense or matter for which intervention is sought."

Ind. Code § 31-15-7-4(b). The court shall presume that an equal division of marital property between the parties is just and reasonable, and may deviate from an equal division only when that presumption is rebutted. Ind. Code § 31-15-7-5. The trial court's division of marital property is "highly fact sensitive and is subject to an abuse of discretion standard." Fobar v. Vonderahe, 771 N.E.2d 57, 59 (Ind. 2002). Also, a trial court's discretion in dividing marital property is to be reviewed by considering the division as a whole, not item by item. Id. We "will not weigh evidence, but will consider the evidence in a light most favorable to the judgment." Id. A trial court may deviate from an equal division so long as it sets forth a rational basis for its decision. Hacker v. Hacker, 659 N.E.2d 1104, 1109 (Ind. Ct. App. 1995). "A party who challenges the trial court's division of marital property must overcome a strong presumption that the court considered and complied with the applicable statute." Wanner v. Hutchcroft, 888 N.E.2d 260, 263 (Ind. Ct. App. 2008).

It is well-established that all marital property goes into the marital pot for division, whether it was owned by either spouse before the marriage, acquired by either spouse after the marriage and before final separation of the parties, or acquired by their joint efforts. Ind. Code § 31-15-7-4(a); Beard v. Beard, 758 N.E.2d 1019, 1025 (Ind. Ct. App. 2001), trans. denied. This "one-pot" theory ensures that all assets are subject to the trial court's power to divide and award. Thompson v. Thompson, 811 N.E.2d 888, 914 (Ind. Ct. App. 2004), reh'g denied, trans. denied. The trial court has no authority to exclude or set aside marital property but must divide all property. Moore v. Moore, 695 N.E.2d 1004, 1010 (Ind. Ct. App. 1998).

13

Ind. Code § 31-15-7-4 provides:

(a)     In an action for dissolution of marriage under IC 31-15-2-2, the court shall divide the property of the parties, whether:

    (1)     owned by either spouse before the marriage;

    (2)     acquired by either spouse in his or her own right:

        (A)     after the marriage; and

        (B)     before final separation of the parties; or

    (3)     acquired by their joint efforts.

(b)     The court shall divide the property in a just and reasonable manner by:

    (1)     division of the property in kind;

    (2)     setting the property or parts of the property over to one (1) of the spouses and requiring either spouse to pay an amount, either in gross or in installments, that is just and proper;

    (3)     ordering the sale of the property under such conditions as the court prescribes and dividing the proceeds of the sale; or

    (4)     ordering the distribution of benefits described in IC 31-9-2-98(b)(2) or IC 31-9-2-98(b)(3) that are payable after the dissolution of marriage, by setting aside to either of the parties a percentage of those payments either by assignment or in kind at the time of receipt.

Ind. Code § 31-15-7-5 provides:

The court shall presume that an equal division of the marital property between the parties is just and reasonable. However, this presumption may be rebutted by a party who presents relevant evidence, including evidence concerning the following factors, that an equal division would not be just and reasonable:

14

(1)    The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.

(2)    The extent to which the property was acquired by each spouse:

   (A)    before the marriage; or

   (B)    through inheritance or gift.

(3)    The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.

(4)    The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

(5)    The earnings or earning ability of the parties as related to:

   (A)    a final division of property; and

   (B)    a final determination of the property rights of the parties.

Father argues that the court erred in failing to evenly divide between the parties certain personal property itemized on a list he submitted to the court.  Specifically, Father maintains that he submitted a list which specifically identified certain household items, that everything on the list which was underlined were items in Mother's possession which he wished to obtain as his sole and separate property, and that the court merely divided the "personal effects and belongings" and "[p]ersonal property in mother's possession" generally and did not specifically note as to why there was an unequal

15

division. Appellant's Brief at 29-30. Father further argues that Mother filed her petition for dissolution on February 11, 2011, that he was attending school at the time of the dissolution and received a disbursement of $3,571.85 for his education in the form of a Pell Grant on February 15, 2011, and that the court in its April 1, 2011 interim order found that Mother was granted the sole and exclusive use of the funds. Father maintains that the purpose of the funds was to meet his "costs of attendance in the higher education program he was enrolled," citing 20 U.S.C. § 1070a,[2] that "[t]here is nothing on the record to indicate that Mother was enrolled in any educational programs," that the marital estate closed on the date the petition for dissolution was filed and any assets acquired for purposes of marital property division are the sole and separate property of the individual who acquired the property, and that the court erred in its final decree in providing no offset for the full amount of the Pell Grant funds to Father.

Mother argues that the list of property submitted by Father contained no corresponding values of the property he sought, that no evidence of the value of any personal property was presented, that case law does not require that a court establish the value of each marital asset before distribution, that the burden of proving the value of marital assets is on the parties to the dissolution, and that Father presented no evidence as to the value of the assets and has waived any error of review. Mother contends, with

---

[2] 20 U.S.C. § 1070a addresses federal Pell Grants and provides in part:

> The purpose of this subpart is to provide a Federal Pell Grant that in combination with reasonable family and student contribution and supplemented by the programs authorized under subparts 3 and 4 of this part, will meet at least 75 percent of a student's cost of attendance (as defined in section 1087ll of this title), unless the institution determines that a greater amount of assistance would better serve the purposes of this section.

16

respect to the Pell Grant funds, that she testified the funds were used to support the family and pay long overdue bills which were in existence at the time the divorce was filed, that "clearly the grant had been applied for and awarded prior to the divorce, but was not received until after the filing," and that "[t]he fact that the money was actually received several days after the filing of the divorce does not establish that it was father's separate property." Appellee's Brief at 20.

In his reply brief, Father argues that the court must divide all property of the parties, that the court had evidence before it of property that needed to be divided between the parties, and that the trial court failed to do so. Father also argues that the Pell Grant, on its face, is for educational support of the recipient, that he was the only one enrolled in school, and thus that the court's order should be reversed.

1.     Division of Household Items

Father requested that the trial court divide specific assets identified in Respondent's Exhibit II as household items. He testified that he underlined the items listed in Respondent's Exhibit II that he would like to obtain. The underlined items on Respondent's Exhibit II include a desk on the front porch, a living room chair, a living room couch, a "Buffett Antique," the "TV/tv cabinet/surround sound/dvd player," the end tables, coffee table, lamp, dining table and chairs, the boys' bunk beds, the small dresser in the bedroom, Z.'s dresser, the rocking chair in his daughter's room, a large red drum set, a garden hose, weed eater, garden tools, lawn mower, and a tenor saxophone. Respondent's Exhibit II. The items on Respondent's Exhibit II which were not underlined included a bench on the front porch, a front porch chair, a basement sectional,

17

a china cabinet, an "Antique wash stand," a desk in the dining room, a queen size bed, the dressers of one of Father's sons and his daughter, the bed of his daughter, an alto saxophone, a small blue drum set, a dryer, a refrigerator, a washer, a stove, and a set of china. Id.

The trial court ordered that Mother receive the "[p]ersonal property in [her] possession including inherited property" and that Father receive the "[c]lothing, papers and any . . . other personal effects and belongings" and the "[h]ousehold appliances." Appellant's Appendix at 21. While the court's order did not specifically designate the items contained in Respondent's Exhibit II, we find that it is both broad and specific enough to apprise the parties which items each was to receive. To the extent Father argues that the order results in an unequal division, we note that Father did not present any evidence as to the value of these items. As it was the burden of the parties to prove the value of the marital assets, we decline to address this issue. See In re Marriage of Church, 424 N.E.2d 1078, 1081 (Ind. Ct. App. 1981) (holding that "any party who fails to introduce evidence as to the specific value of the marital property at the dissolution hearing is estopped from appealing the distribution on the ground of trial court abuse of discretion based on that absence of evidence"); see also In re Marriage of Larkin, 462 N.E.2d 1338, 1344 (Ind. Ct. App. 1984) (finding no abuse of discretion in the trial court's division of assets where the parties failed to provide evidence of the value of certain assets at trial).

2.    Pell Grant Funds

With respect to the Pell Grant funds received on February 15, 2011, the evidence shows that Mother filed her petition for dissolution on February 11, 2011. In the decree, the trial court found that the Pell Grant together with the parties' tax refund totaled $12,367.00 and that, "[a]s Father was in school and Mother had limited income, . . . the court allowed Mother the use of this money to pay for household expenses." Id. at 20. Father testified that he attended school at Ivy Tech. Respondent's Exhibit GG shows that the amount of Pell Grant funds distributed was $3,571.85, and Petitioner's Exhibit 5 includes a handwritten notation that the Pell Grant funds were $3,571. Mother does not contend that the Pell Grant funds were intended for her or that she was enrolled in any school program. The Pell Grant funds were distributed after the date Mother filed her petition for dissolution and thus were the separate property of Father as the intended recipient of the funds. See Keown v. Keown, 883 N.E.2d 865, 871 (Ind. Ct. App. 2008) (noting that the marital estate closes on the date the dissolution petition is filed) (citing Thompson, 811 N.E.2d at 913 (providing that generally the marital estate closes on the date the dissolution petition was filed and debts incurred by one party after that point are not to be included in the marital estate)). Further 20 U.S.C. § 1070a clearly provides that a Federal Pell Grant is to be used for a student's cost of attendance at an institution. See supra n.2. In dividing the marital property, the court erred in failing to account for or provide an offset for the amount of the Pell Grant funds. Accordingly, we reverse and remand with instructions to modify the court's order to allocate or assign the Pell Grant

19

funds to Father and for any other necessary revisions to the decree to effect this modification.

## CONCLUSION

For the foregoing reasons, we reverse the trial court's order that Paternal Grandparents and Maternal Grandmother participate in family therapy and the court's orders with respect to the division of the marital estate to the extent it failed to allocate the Pell Grant funds to Father, remand for modification of the decree of dissolution consistent with this opinion, and in all other respects, including the court's custody determinations and division of the parties' household items, affirm the ruling of the trial court.

Affirmed in part, reversed in part, and remanded.

RILEY, J., and BRADFORD, J., concur.