## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 07 2016, 8:32 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jill Doggett
Hart Bell, LLC
Vincennes, Indiana

ATTORNEY FOR APPELLEE

Katharine Vanost Jones
Evansville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Richard K. Ray,

*Appellant-Petitioner,*

v.

Ellyn E. Ray,

*Appellee-Respondent.*

July 7, 2016

Court of Appeals Case No.
42A01-1508-DR-1255

Appeal from the Knox Superior Court

The Honorable Ryan Johanningsmeier, Judge

Trial Court Cause No.
42D02-0301-DR-23

**Robb, Judge.**

# Case Summary and Issues

[1] Richard and Ellyn Ray's twenty-nine-year marriage was dissolved in July 2003. Provisions were made in the parties' Settlement Agreement and in two subsequent court orders for division of Richard's retirement accounts due to his employment at Vincennes University. After Richard retired from Vincennes University in 2014, Ellyn filed with the trial court a Motion to Correct Erroneous Court Order and Enforcement of Marital Settlement Agreement. The trial court granted the motion and crafted a remedy requiring Richard to pay certain sums to Ellyn. Richard now appeals, raising several issues which we consolidate and restate as: 1) whether the trial court erred in valuing his pension benefit; and 2) whether the trial court erred in its distribution of those accounts. Concluding the trial court did not err in valuing the accounts, but used an incorrect coverture fraction to determine the appropriate amount of distribution to Ellyn, we affirm in part and reverse and remand in part.

# Facts and Procedural History

[2] Richard and Ellyn were married in June 1974. Richard began working at Vincennes University in August 1975, and worked there continuously thereafter. As part of his employment, Richard earned certain retirement benefits. Specifically, he had a Teachers Insurance and Annuity Association-College Retirement Equities Fund ("TIAA-CREF") account and an Indiana State Teachers Retirement Fund ("TERF") account. The TERF account has two components: a monthly pension benefit (determined by salary history,

years of service, age, and selected retirement benefit) and an annuity savings account (funded by investments made with voluntary and mandatory contributions).

[3] Richard and Ellyn were divorced pursuant to a Settlement Agreement and order dated July 1, 2013. The Settlement Agreement provided the following with respect to Richard's retirement benefits:

> [Ellyn] has no pension, and [Richard] has pension rights through Vincennes University which are fluctuating with the last known valuations as follows: TIAA and CREF as of 12-31-02 at $240,703.32; Indiana State Teachers Retirement Fund as of 03-31-03 at $45,085.86. These accounts shall be equally divided between the parties with [Richard's] attorney preparing a Qualified Domestic Relations Order [("QDRO")].

Appellant's Appendix at 26. It is undisputed that the $45,085.86 value stated for the TERF account reflected only the value of Richard's annuity savings account and not the value of his pension benefit.

[4] After the parties signed and submitted the Settlement Agreement (but before the trial court signed it on July 1, 2003), Richard's counsel submitted a Supplemental Court Order which was also signed by the trial court on July 1, 2003. The Supplemental Court Order provided, in relevant part:

> Comes now counsel for [Richard] and advises the Court that the Settlement Agreement of the parties, paragraph six (6) entitled Pension Accounts, included therein an account . . . with a March 31, 2003 balance of $45,085.86. . . .

Counsel for [Richard] now informs the Court that [TERF] does not accept [QDROs], and that in order to carry out the terms of the parties' Settlement Agreement, it is required that the order of division of the [TERF account] be placed upon [Richard] and not [TERF].

* * *

1. That in accordance with the Settlement Agreement of the parties dated June 20, 2003, paragraph six (6) thereof, entitled "Pension Accounts," the following orders are placed upon [Richard]:

> A. That at such time as [Richard] commences receiving his monthly payments from [TERF] Defined Benefit Pension Annuity, he shall, on receipt of his monthly payment, immediately pay over to [Ellyn] a sum equal to one-half (1/2) of the monthly payments received;

> B. That with reference to [TERF] Defined Contribution Benefit Pension Fund, at such time as [Richard] is ordered to receive his Fund balance, he shall, immediately upon receipt of same, pay over to [Ellyn] a sum equal to one-half (1/2) of the then lump sum received.

2. That each party shall be responsible for paying the taxes on the sums which they, themselves, receive for their own use.

3. This Court reserves jurisdiction to issue further orders as needed to execute this Order.

*Id.* at 27-28.[1]  On August 4, 2003, the trial court signed an Amended Supplemental Court Order which amended the Supplemental Court Order to state:

> Comes now counsel for [Richard] and advises the Court that the Settlement Agreement of the parties, paragraph six (6) entitled Pension Accounts, included therein an account . . . *with a July 1, 2003 beginning balance of $51,541.93. . . .*
>
> > A.  That at such time as [Richard] commences receiving his monthly payments from [TERF] Defined Benefit Pension Annuity, he shall, on receipt of his monthly payment, immediately pay over to [Ellyn] a sum equal to one-half (1/2) of the monthly payments received *until he has paid to [Ellyn] the sum of $25,770.96 which is one-half (1/2) the total sum in said account on July 1, 2003*;
> >
> > B.  That with reference to [TERF] Defined Contribution Benefit Pension Fund, at such time as [Richard] is ordered to receive his Fund balance, he shall, immediately upon receipt of same, pay over to [Ellyn] a sum equal to one-half (1/2) of the then lump sum received *but not exceeding $25,770.96 which is one-half (1/2) of the total sum in said account on July 1, 2003.*
>
> * * *
>
> 3.  This Court reserves jurisdiction to issue further orders as needed to execute this Order.  *Additionally, this Amended*

---

[1] The trial court also signed the QDRO directed to TIAA-CREF on July 1, 2003.  Division of that account is not at issue in this appeal.

> *Supplemental Court Order replaces and supplants the Supplemental Court Order dated July 1, 2003.*

*Id.* at 32-33 (emphasis added to show amendments). A letter dated August 8, 2003 (dictated August 4, 2003), from Richard's counsel to Ellyn's counsel states:

> Enclosed please find Amended Supplemental Order which refers to [TERF].
>
> My original Order was drafted in error and failed to set forth the particular language that Ellyn was to receive one-half (1/2) of the account as established on July 1, 2003, the date of the Final Decree.
>
> Sorry for the inconvenience and confusion.

*Id.* at 34.

[5]   Richard retired from Vincennes University in July 2014. On June 2, 2014, Richard sent a letter to Ellyn explaining he was due to begin receiving checks from TERF by the end of August, but separate from his monthly benefit, he was able to withdraw a lump sum of $5,361.19 on which taxes had already been paid and he would forward her half ($2,680.60) as soon as he received it. The letter also noted that he would be sending her one-half of his monthly check until the remaining balance of $23,091.36 had been paid.

[6]   On November 7, 2014, Ellyn filed a Motion to Correct Erroneous Court Order and Enforce Marital Settlement Agreement. This motion does not appear in

the record provided to us, but it is apparent that Ellyn was seeking relief from the Amended Supplemental Court Order which purported to fix the amount of Richard's TERF account as of the date of the divorce and did so wrongly by including only the value of the annuity savings account and failing to reflect the value of the pension benefit at that time. Following a hearing, the trial court issued the following order:

Findings of Fact

* * *

5. At the time of [Richard's] retirement, he had approximately 38 years of service credit towards his TERF pension. Approximately 29 of these years of service credit were earned during the marriage of the parties.

* * *

10. Read together, it is clear that the Settlement Agreement signed by the parties and the Supplemental Court Order filed by [Richard's] attorney clearly indicate that the parties were to equally divide [Richard's] TERF pension and annuity savings account as they existed at the time of the divorce.

11. Both [Richard] and [Ellyn] testified at a hearing on [Wife's] Motion to Correct Erroneous Court Order and Enforce Marital Settlement Agreement on March 20, 2015, that at the time they signed the Marital Settlement Agreement which became part of the Court's Summary Dissolution of Marriage Decree, it was their agreement that [Richard's] TERF pension and annuity savings account would be equally divided between them.

\* \* \*

13. The Court, having taken judicial notice of the records of the proceedings held in this matter, finds that prior to the execution of the Amended Supplemental Court Order, there was no motion, petition or other request filed by [Richard] to modify the terms of the Summary Dissolution of Marriage Decree or Supplemental Court Order . . . .

14. The Court, having taken judicial notice of the records of the proceedings held in this matter, finds that prior to the execution of the Amended Supplemental Court Order . . . there was no hearing held on [Richard's] request to alter the terms of the Summary Dissolution of Marriage Decree and Supplemental Court Order . . . .

\* \* \*

17. The Amended Supplemental Order . . . does not contain a signature of either [Ellyn] or her attorney or any other language which would indicate that [Ellyn] and/or her former attorney had ever received notice of the filing of the Amended Supplemental Court order prior to its execution by the Court or had approved or acquiesced to the language contained in the Amended Supplemental Court Order.

18. [Ellyn] testified . . . that she had no notice of the execution of the Amended Supplemental Court Order by the Court . . . until the Amended Supplemental Court Order was supplied to her current attorney in 2014. No evidence was presented by [Richard] to refute this testimony.

\* \* \*

20. [Richard's attorney's] letter [of August 8, 2003] clearly indicates that [Richard's] attorney advised [Ellyn's] attorney of the filing of the Amended Supplemental Court Order as a *fait accompli*. This letter does not reflect any communication between the attorneys or any agreement of the parties prior to the filing and execution of the Amended Supplemental Court Order . . . .

21. Attached to the Amended Supplemental Court Order is a document from TERF which reflects [Richard's] annuity savings account balance as of July 1, 2003. This document shows that as of that date, [Richard's] annuity savings account had a value of $51,541.93.

22. Jerry Peters, a certified public account[ant], who testified as an expert in the valuation of [Richard's] TERF plan testified that balance in [Richard's] TERF annuity savings account as of July 1, 2003, had no relationship, whatsoever, to the value of [Richard's] TERF pension at that time, because these plans were wholly unrelated.

23. Jerry Peters further testified that as of July 1, 2003, the value of [Richard's] TERF pension was $158,460.68. Peters testified that this is in addition to the value of [Richard's] interest in his annuity savings account.

* * *

25. On November 7, 2014, [Ellyn] filed her Motion to Correct Erroneous Court Order and Enforcement of Marital Settlement Agreement requesting that the terms of the original Settlement Agreement and Supplemental Court Order be enforced such that she received one-half of both the value of [Richard's] annuity savings account and pension that were accumulated during the marriage of the parties. At a hearing on [Ellyn's motion], [Richard] acknowledged that the TERF account statement filed

with the Amended Supplemental Court Order . . . reflected only the value of his annuity savings account balance as of that date and agreed with Jerry Peters's testimony that as of July 1, 2003, the present cash value of his TERF pension was $158,460.68.

26. [Richard] further testified . . . that the language limiting the value of [Ellyn's] interest in his TERF pension to $25,770.96 was a mistake and that one-half of the value of his pension as accumulated during the marriage would be substantially greater than the amount set forth in the Amended Supplemental Court Order.

27. While acknowledging that the numbers contained in the Amended Supplemental Court Order were a mistake, [Richard] maintains that [Ellyn's] interest in his TERF pension should be capped at $25,770.96 . . . .

Conclusions of Law

* * *

6. The terms of the parties' marital Settlement Agreement . . . are clear and unambiguous. [Ellyn] was to receive one-half of the value of [Richard's] TERF annuity savings account and pension as of the date of dissolution. This is made clear by both the language of the Supplemental Court Order . . . which provided a mechanism for the equal division of both [TERF accounts] and the testimony of the parties . . . that it was their agreement that [Richard's] TERF retirement plan be divided equally between the parties.

* * *

9.  The Amended Supplemental Court Order . . . is void and unenforceable for each of the following reasons:

> a.  As a contract between the parties, the terms of the marital Settlement Agreement . . . were not subject to modification in the absence of an agreement between the parties to do so.  There is no evidence which would show that [Ellyn] or her attorney was notified of the filing of the Amended Supplemental Court Order prior to its execution by the Court or that [Ellyn] or her attorney consented to a modification . . . .

> b.  The Amended Supplemental Court Order was submitted in an *ex parte* fashion by [Richard's] counsel and the Court signed the Order without giving [Ellyn] notice or an opportunity to be heard. . . . [Ellyn] may not be deprived of a property interest, such as her interest in [Richard's] TERF pension without notice and an opportunity to be heard.

10.  Having concluded that the . . . Amended Supplemental Court Order may not alter the terms of the marital Settlement Agreement, it is now necessary to craft a remedy:

> a.  With regards to [Richard's] annuity savings account, the Court finds that this account had a value of $51,541.93 as of the date of dissolution.  [Ellyn] is entitled to one-half of this value, or $25,770.96.  [Ellyn] has already received $2,680.60 of this sum.  [Richard] is to continue paying one-half of his net monthly TERF annuity payment to [Ellyn] as he receives these payments, until [Ellyn] has received a total of $25,770.96.

> b.  With regards to [Richard's] TERF pension, the Court finds that the pension had a present cash value as of the

date of dissolution of $158,460.68. [Ellyn] would be entitled to one-half of this value or $79,230.34. In the alternative, [Richard] could pay to [Ellyn] one-half of that part of his net TERF monthly pension payments that was accumulated during the marriage. Because 29 of 38 years of [Richard's] service credit was accumulated during the marriage of the parties, [Ellyn] would be entitled to one-half of 29/38's or 76.3% of [Richard's] net monthly payment. . . .

c. With regards to [Richard's] TERF pension, [Richard] is to make a monthly payment to [Ellyn] equal to 29/38's or 76.3% of his net monthly pension payments for so long as he receives these payments. In the alternative, [Richard] may pay to [Ellyn] the sum of $79,230.34, less the payments that [Ellyn] has already received from [Richard].

*Id.* at 6-23. Richard now appeals.

# Discussion and Decision

## I. Standard of Review

[7] The trial court entered findings of fact and conclusions thereon at the request of the parties. In reviewing findings of fact and conclusions of law, we apply "a two-tiered standard of review by first determining whether the evidence supports the findings and then whether the findings support the judgment." *Weigel v. Weigel*, 24 N.E.3d 1007, 1010 (Ind. Ct. App. 2015). The trial court's findings and judgment will only be set aside if they are clearly erroneous. *Barton v. Barton*, 47 N.E.3d 368, 373 (Ind. Ct. App. 2015), *trans. denied; see also* Ind. Trial Rule 52(A) ("[T]he court on appeal shall not set aside the findings or

judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."). Findings are clearly erroneous when the record contains no facts to support them either directly or by inference. *Campbell v. Campbell*, 993 N.E.2d 205, 209 (Ind. Ct. App. 2013), *trans. denied*. A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. *Id.* To determine that a finding or conclusion is clearly erroneous, our review of the evidence must leave us with the firm conviction that a mistake has been made. *Id.*

# II. Richard's TERF Accounts

[8] Richard does not appeal the trial court's determination that the Amended Supplemental Court Order was void and did not alter the terms of the parties' Settlement Agreement and Supplemental Court Order. Rather, he contends the trial court's findings regarding the value of his TERF annuity savings account and pension benefit are clearly erroneous. He further contends the trial court's determination of how much Ellyn was entitled to receive from those accounts is clearly erroneous.

## A. Valuation

### 1. Annuity Savings Account

[9] The trial court found the value of Richard's annuity savings account to be $51,541.93 on the date of dissolution and based its distribution award on that amount. Richard argues that the Amended Supplemental Court Order is the only document in which this figure appears, and because it is void and did not

alter the terms of the Settlement Agreement, his annuity savings account should have been valued at $45,085.86 as reflected in the Settlement Agreement.

[10] A trial court has broad discretion to determine the date upon which marital assets should be valued. *McGrath v. McGrath*, 948 N.E.2d 1185, 1187 (Ind. Ct. App. 2011). For purposes of choosing a date upon which to value marital assets, the trial court may select any date between the date of filing the petition for dissolution and the date of the final hearing.[2] *Id.* There is no requirement that the valuation date be the same for every asset. *Id.* In addition, the trial court has broad discretion to assign a value to marital assets. *Pitcavage v. Pitcavage*, 11 N.E.3d 547, 563 (Ind. Ct. App. 2014). As long as there is sufficient evidence to support the valuation, we will not find the trial court to have abused its discretion, even if the circumstances would support a different award. *Id.*

[11] The Settlement Agreement stated Richard's annuity savings account was valued at $45,085.86 as of March 31, 2003 – the "last known valuation" at the time the parties signed the agreement and the value of the account a full three months prior to the dissolution. App. at 26. Jerry Peters, Ellyn's expert witness, testified that as of June 30, 2003, the value of the account was $51,541.93. *See* Transcript at 110; Ellyn's Exhibit 7. Although the Settlement Agreement provides for the *account* to be equally divided between the parties and reflects

---

[2] Here, the parties waived a final evidentiary hearing and submitted a settlement agreement which, upon signature by the trial court on July 1, 2003, acted as a summary disposition.

the last known value of the account, neither it nor the Supplemental Court Order specify the *amount* to be divided or the *date* upon which the amount shall be fixed for purposes of division, as the Settlement Agreement acknowledges the value is "fluctuating." App. at 26. Richard testified that it was the intent of the parties when they signed the Settlement Agreement that his retirement accounts be divided equally as of the date of their divorce. *See* Tr. at 48-49. As the trial court may choose any date between the date the petition was filed (January 23, 2003) and the date of the final hearing (July 1, 2003) on which to value an asset and may assign to an asset any value within the evidence, the trial court did not clearly err in choosing the latest date and valuing the annuity savings account at $51,541.93.

## 2. Pension Benefit

[12] Richard contends the trial court erred in valuing his pension benefit at the time of dissolution at $158,460.68 and basing its distribution order on that amount for the following reasons: 1) though he had enough credits to be vested in his pension, he only qualified for 54% of the regular pension benefit at the time of the dissolution; and 2) if he had retired on July 1, 2003, the value of his pension benefit on that date would have been $147,889.61. Essentially, Richard contends that because he would not have received the full $158,460.68 on the date of dissolution, the trial court clearly erred in valuing his pension benefit at that amount.

[13] Indiana Code section 31-9-2-98 defines "property" for the purpose of a dissolution action to include a present right to withdraw pension or retirement

benefits, the right to receive pension or retirement benefits that are vested but payable after the dissolution of the marriage, and the right to receive disposable retired or retainer pay acquired during the marriage that is or may be payable after the dissolution. *Pherson v. Lund*, 997 N.E.2d 367, 370 (Ind. Ct. App. 2013). In other words, in order for a pension or retirement plan to be included in the marital estate, it must be vested. *In re Marriage of Preston*, 704 N.E.2d 1093, 1097 (Ind. Ct. App. 1999). An asset may vest in possession or in interest. "Vesting in possession connotes an immediate existing right of present enjoyment, while vesting in interest implies a presently fixed right to future enjoyment." *Id.* There is no question Richard's pension was vested, properly included within the marital estate, and subject to division. As to the valuation of the pension benefit, we recognize that at the time of the divorce, there were various contingencies that could have impacted the pension benefit ultimately due Richard. Because the parties did not agree to a value of the pension benefit at the time of dissolution, however, the trial court was required to value the pension after Richard's retirement based upon the evidence presented. None of the contingencies came to pass, and Richard retired with his full pension benefit. Because the trial court's valuation was within the range of the evidence presented, we cannot say it clearly erred in valuing the pension benefit at the higher amount.

# B. Distribution

## 1. *Credit for Payments Made[3]*

[14]   Richard notes the trial court acknowledged the payment of $2,680.60 he made to Ellyn from the lump sum distribution from his annuity savings account, but failed to give him credit for the regular monthly payments he had made to Ellyn thereafter.  We disagree.  The trial court's order states:

> With regards to [Richard's] annuity savings account, the Court finds that this account had a value of $51,541.93 as of the date of dissolution.  [Ellyn] is entitled to one-half of this value, or $25,770.96.  [Ellyn] has already received $2,680.60 of this sum. [Richard] is to continue paying one-half of his net monthly TERF annuity payment to [Ellyn] as he receives these payments, until [Ellyn] has received a total of $25,770.96.

App. at 21.  This paragraph states that the total due to Ellyn from the annuity savings account is $25,770.96, acknowledges that she has received $2,680.60 as a lump sum, and—by stating that Richard is to *continue* paying Ellyn one-half of his net monthly annuity savings account payment until he has paid Ellyn the full amount—further acknowledges that Richard has already made some monthly payments to Ellyn.

---

[3] Richard briefly mentions that he argued at the hearing that he should also receive credit for an alleged overpayment Ellyn received from the TIAA-CREF account.  *See* Appellant's Brief at 12-13.  The focus of the parties' disagreement was the TERF accounts and the trial court did not address the TIAA-CREF account in its order.  Richard does not develop this argument in his brief and we decline to address it.

Richard testified that he paid the appropriate sum to Ellyn every month since he began receiving distributions from his annuity savings account. Tr. at 73. Ellyn agreed that she had been receiving monthly checks. *Id.* at 19. There was no testimony about the exact amount Richard had been paying to Ellyn every month, nor how many months he had been doing so. Rather than attempting to do the computation of how much Richard has already paid Ellyn in monthly installments when there was no specific evidence thereof, the trial court's order set the parameters of the payment and leaves the computation to the parties. Assuming Richard keeps accurate records, he will receive full credit for his payments and the trial court did not err.

## 2. Coverture Fraction

Richard also contends the trial court erred in determining the amount of his pension benefit he was to pay Ellyn by using an incorrect coverture fraction. Computing a "coverture fraction" is one method a trial court may use to distribute pension or retirement benefits between the parties. *In re Marriage of Fisher*, 24 N.E.3d 429, 433 (Ind. Ct. App. 2014). The value of the benefit is multiplied by a fraction, the numerator of which is the period of time during which pension benefits accrued while the marriage existed, and the denominator of which is the total period of time during which pension rights accrued. *Id.*

The trial court found Richard had worked at Vincennes University for thirty-eight years, that he and Ellyn were married for twenty-nine years, and utilized a coverture fraction based on these figures (29/38 = 76.3%). Richard contends

this is in error, as he had accumulated thirty-*nine* years of service with Vincennes University, and that although he and Ellyn were married for twenty-nine years total, he only worked for Vincennes University for twenty-*eight* of those years. He argues the correct coverture fraction should be 28/39, or 71.8%. Ellyn agrees the trial court's coverture fraction is incorrect based on the evidence. *See* Brief of Appellee at 14. We also agree the coverture fraction should be 28/39, and remand to the trial court to amend its order to so reflect.

[18] In addition, we note the trial court's order states with respect to Richard's obligation to pay Ellyn part of his pension benefit:

> b. With regards to [Richard's] TERF pension, the Court finds that the pension had a present cash value as of the date of dissolution of $158,460.68. [Ellyn] would be entitled to one-half of this value or $79,230.34. In the alternative, [Richard] could pay to [Ellyn] one-half of that part of his net TERF monthly pension payments that was accumulated during the marriage. Because 29 of 38 years of [Richard's] service credit was accumulated during the marriage of the parties, *[Ellyn] would be entitled to one-half of 29/38's or 76.3% of [Richard's] net monthly payment . . . .* In this case, [Richard] was accruing service credit during the 29 years of the parties' marriage and he retired with 38 total years of service credits. Accordingly, the coverture fraction would be 29/38's or 76.3%.

> c. With regards to [Richard's] TERF pension, *[Richard] is to make a monthly payment to [Ellyn] equal to 29/38's or 76.3% of his net monthly pension payments for so long as he receives these payments.* In the alternative, [Richard] may pay to [Ellyn] the sum of $79,230.34, less the payments that [Ellyn] has already received from [Richard].

App. at 21-22 (emphasis added). Paragraph 10.b. correctly notes that Ellyn is entitled to *one-half* of the coverture fraction amount of Richard's monthly pension benefit, but paragraph 10.c. does not similarly include the one-half limitation. To avoid any confusion, we also direct the trial court on remand to amend paragraph 10.c. of its order to reflect that Richard may either pay Ellyn the total amount she is due in a lump sum or *one-half* of the correct coverture fraction amount (71.8%) of his monthly pension benefit.

# Conclusion

[19] The trial court did not clearly err in determining the value of Richard's annuity savings account or pension benefit on the date of dissolution, as its determination was within the range of evidence presented. Further, the trial court's order does not fail to give Richard full credit for sums he has already paid Ellyn. The trial court's order does, however, use an incorrect coverture fraction, and we therefore reverse that portion of the trial court's order and remand for further proceedings consistent with this opinion.

[20] Affirmed in part and reversed and remanded in part.

Najam, J., and Crone, J., concur.